STRINGER *v.* BLACK, COMMISSIONER, MISSISSIPPI
DEPARTMENT OF CORRECTIONS, ET AL.

No. 90–6616.   Argued December 9, 1991—Decided March 9, 1992

224

KENNEDY, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and WHITE, BLACKMUN, STEVENS, and O'CONNOR, JJ., joined. SOUTER, J., filed a dissenting opinion, in which SCALIA and THOMAS, JJ., joined, *post*, p. 238.

*Kenneth J. Rose*, by appointment of the Court, 502 U. S. 1011, argued the cause for petitioner. With him on the brief were *James W. Craig* and *Louis D. Bilionis*.

*Marvin L. White, Jr.*, Assistant Attorney General of Mississippi, argued the cause for respondents. With him on the brief was *Mike Moore*, Attorney General.*

JUSTICE KENNEDY delivered the opinion of the Court.

The death sentence of the petitioner in this case was decreed by a judgment that became final before we decided

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Texas et al. by *Dan Morales*, Attorney General of Texas, *Will Pryor*, First Assistant Attorney General, *Mary F. Keller*, Deputy Attorney General, and *Michael P. Hodge, Dana E. Parker*, and *Margaret Portman Griffey*, Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *James H. Evans* of Alabama, *Grant Woods* of Arizona, *Daniel Lungren* of California, *Linley E. Pearson* of Indiana, *Frederic J. Cowan* of Kentucky, *William B. Webster* of Missouri, *Marc Racicot* of Montana, *Frankie Sue Del Papa* of Nevada, *Lacy H. Thornburg* of North Carolina, *Susan B. Loving* of Oklahoma, *Ernest D. Preate, Jr.*, of Pennsylvania, *Mary Sue Terry* of Virginia, and *Joseph B. Meyer* of Wyoming; and for the Criminal Justice Legal Foundation by *Kent S. Scheidegger*.

either *Maynard* v. *Cartwright*, 486 U. S. 356 (1988), or *Clemons* v. *Mississippi*, 494 U. S. 738 (1990). The petitioner argues that the State of Mississippi committed the same error in his case as it did in *Clemons*, and that under both *Maynard* and *Clemons* his sentence is unconstitutional. The question presented is whether in a federal habeas corpus proceeding a petitioner is foreclosed from relying on *Maynard* and *Clemons* because either or both announced a new rule as defined in *Teague* v. *Lane*, 489 U. S. 288 (1989).

## I

In June 1982, Ray McWilliams and his wife, Nell, were shot to death in their Jackson, Mississippi, home as part of an armed robbery. The petitioner James R. Stringer did not fire the fatal shots, but he did plan the robbery and take part in it. The killing was part of his plan from the outset. The crimes, and their gruesome aspects, are described in the opinion of the Mississippi Supreme Court on direct review of the conviction and sentence. *Stringer* v. *State*, 454 So. 2d 468, 471–473 (1984).

Under Mississippi law the death sentence may be imposed for murders designated by statute as "capital murder." Miss. Code Ann. § 97–3–19(2) (Supp. 1991). A killing in the course of a burglary or robbery is included within that category. Following a capital murder conviction, the jury in the Mississippi system proceeds to the sentencing phase of the case. For a defendant who has been convicted of capital murder to receive the death sentence, the jury must find at least one of eight statutory aggravating factors, and then it must determine that the aggravating factor or factors are not outweighed by the mitigating circumstances, if any. § 99–19–101.

The jury found petitioner guilty of capital murder in the course of a robbery. In the sentencing phase the jury found that there were three statutory aggravating factors. The

aggravating factors as defined in the jury instructions, and for the most part following the statutory wording, were:

"1. The Defendant contemplated that life would be taken and/or the capital murder was intentionally committed and that the Defendant was engaged in an attempt to commit a robbery; and was committed for pecuniary gain.

"2. The capital murder was committed for the purpose of avoiding or preventing the detection and lawful arrest of James R. Stringer, the Defendant.

"3. The capital murder was especially heinous, atrocious or cruel." Brief for Respondents 4.

The trial court in its instructions did not further define the meaning of the third factor.

On direct review the Mississippi Supreme Court affirmed. *Stringer* v. *State, supra.* With respect to the sentence, the court found it was not "imposed under the influence of passion, prejudice or any other arbitrary factor," *id.,* at 478; "the evidence fully support[ed] the jury's finding of statutorily required aggravating circumstances," *id.,* at 479; and the death sentence was not disproportionate to sentences imposed in other cases, *ibid.* Petitioner's conviction became final when we denied certiorari on February 19, 1985. *Stringer* v. *Mississippi,* 469 U. S. 1230. Postconviction relief was denied in the state courts. *Stringer* v. *State,* 485 So. 2d 274 (1986).

This case comes to us from proceedings begun when petitioner filed his first federal habeas petition in the United States District Court for the Southern District of Mississippi. The relevant claim is petitioner's contention that the third aggravating factor found by the jury and considered in the sentencing proceeding, the "heinous, atrocious or cruel" aggravating factor, was so vague as to render the sentence arbitrary, in violation of the Eighth Amendment's proscription of cruel and unusual punishment. The District Court found the claim subject to a procedural bar and, in the alter-

native, ruled it had no merit. *Stringer* v. *Scroggy*, 675 F. Supp. 356, 366 (1987).

Without consideration of the procedural bar question, the Court of Appeals affirmed on the merits, finding no constitutional infirmity in the jury's consideration of the third aggravating factor because two other aggravating factors were unchallenged. *Stringer* v. *Jackson*, 862 F. 2d 1108 (CA5 1988). When the Court of Appeals affirmed, we had not decided *Clemons* v. *Mississippi*, and we later vacated its opinion for further consideration. 494 U. S. 1074 (1990). On remand the Court of Appeals held that petitioner was not entitled to rely on *Clemons* or the related case of *Maynard* v. *Cartwright* in his habeas corpus proceeding because those decisions announced a new rule after his sentence was final. 909 F. 2d 111 (1990). The court relied upon its earlier analysis in *Smith* v. *Black*, 904 F. 2d 950 (1990), cert. pending, No. 90–1164, a case that had also presented the question whether *Clemons* and *Maynard* announced a new rule. We granted certiorari, 500 U. S. 915 (1991), and now reverse.

## II

Subject to two exceptions, a case decided after a petitioner's conviction and sentence became final may not be the predicate for federal habeas corpus relief unless the decision was dictated by precedent existing when the judgment in question became final. *Butler* v. *McKellar*, 494 U. S. 407 (1990); *Penry* v. *Lynaugh*, 492 U. S. 302 (1989); *Teague* v. *Lane*, 489 U. S. 288 (1989). As we explained in *Butler*, "[t]he 'new rule' principle . . . validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." 494 U. S., at 414. Neither one of the exceptions is at issue here, so our inquiry is confined to the question whether *Clemons, Maynard,* or both announced a new rule.

When a petitioner seeks federal habeas relief based upon a principle announced after a final judgment, *Teague* and our

subsequent decisions interpreting it require a federal court to answer an initial question, and in some cases a second. First, it must be determined whether the decision relied upon announced a new rule. If the answer is yes and neither exception applies, the decision is not available to the petitioner. If, however, the decision did not announce a new rule, it is necessary to inquire whether granting the relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent. See *Butler* v. *McKellar, supra,* at 414–415. The interests in finality, predictability, and comity underlying our new rule jurisprudence may be undermined to an equal degree by the invocation of a rule that was not dictated by precedent as by the application of an old rule in a manner that was not dictated by precedent.

A

A determination whether *Maynard* and *Clemons* announced a new rule must begin with *Godfrey* v. *Georgia,* 446 U. S. 420 (1980). In *Godfrey* we invalidated a death sentence based upon the aggravating circumstance that the killing was "outrageously or wantonly vile, horrible and inhuman." *Id.,* at 428–429. The formulation was deemed vague and imprecise, inviting arbitrary and capricious application of the death penalty in violation of the Eighth Amendment. We later applied the same analysis and reasoning in *Maynard.* In *Maynard* the aggravating circumstance under an Oklahoma statute applied to a killing that was "especially heinous, atrocious, or cruel." 486 U. S., at 359. We found the language gave no more guidance than did the statute in *Godfrey,* and we invalidated the Oklahoma formulation. 486 U. S., at 363–364.

In the case now before us Mississippi does not argue that *Maynard* itself announced a new rule. To us this appears a wise concession. *Godfrey* and *Maynard* did indeed involve somewhat different language. But it would be a mistake to conclude that the vagueness ruling of *Godfrey* was limited

to the precise language before us in that case. In applying *Godfrey* to the language before us in *Maynard,* we did not "brea[k] new ground." *Butler* v. *McKellar, supra,* at 412. *Maynard* was, therefore, for purposes of *Teague,* controlled by *Godfrey,* and it did not announce a new rule.

## B

Of more substance is the State's contention that it was a new rule to apply the *Godfrey* and *Maynard* holdings to the Mississippi sentencing process. The State argues this must have been an open question when petitioner's sentence became final, with *Clemons* yet undecided. We acknowledge there are differences in the use of aggravating factors under the Mississippi capital sentencing system and their use in the Georgia system in *Godfrey.* In our view, however, those differences could not have been considered a basis for denying relief in light of precedent existing at the time petitioner's sentence became final. Indeed, to the extent that the differences are significant, they suggest that application of the *Godfrey* principle to the Mississippi sentencing process follows, *a fortiori,* from its application to the Georgia system.

### 1

The principal difference between the sentencing schemes in Georgia and Mississippi is that Mississippi is what we have termed a "weighing" State, while Georgia is not. See *Clemons* v. *Mississippi,* 494 U. S., at 745; *Parker* v. *Dugger,* 498 U. S. 308, 318 (1991). Under Mississippi law, after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence. By contrast, in Georgia the jury must find the existence of one aggravating factor before imposing the death penalty, but aggravating factors as such have no specific function in the jury's decision whether a defendant who has been found to be eligible for the death penalty should

receive it under all the circumstances of the case. Instead, under the Georgia scheme, "'[i]n making the decision as to the penalty, the factfinder takes into consideration all circumstances before it from both the guilt-innocence and the sentence phases of the trial. These circumstances relate both to the offense and the defendant.'" *Zant* v. *Stephens*, 462 U. S. 862, 872 (1983) (quoting the response of the Georgia Supreme Court to our certified question).

That Mississippi is a weighing State only gives emphasis to the requirement that aggravating factors be defined with some degree of precision. By express language in *Zant* we left open the possibility that in a weighing State infection of the process with an invalid aggravating factor might require invalidation of the death sentence. *Id.*, at 890. Although we later held in *Clemons* v. *Mississippi* that under such circumstances a state appellate court could reweigh the aggravating and mitigating circumstances or undertake harmless-error analysis, we have not suggested that the Eighth Amendment permits the state appellate court in a weighing State to affirm a death sentence without a thorough analysis of the role an invalid aggravating factor played in the sentencing process.

We require close appellate scrutiny of the import and effect of invalid aggravating factors to implement the well-established Eighth Amendment requirement of individualized sentencing determinations in death penalty cases. See *Zant, supra*, at 879; *Eddings* v. *Oklahoma*, 455 U. S. 104, 110–112 (1982); *Lockett* v. *Ohio*, 438 U. S. 586, 601–605 (1978) (plurality opinion); *Roberts* v. *Louisiana*, 431 U. S. 633, 636–637 (1977); *Gregg* v. *Georgia*, 428 U. S. 153, 197 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.); *Woodson* v. *North Carolina*, 428 U. S. 280, 303–304 (1976) (plurality opinion). In order for a state appellate court to affirm a death sentence after the sentencer was instructed to consider an invalid factor, the court must determine what the sentencer would have done absent the factor. Otherwise, the defend-

ant is deprived of the precision that individualized consideration demands under the *Godfrey* and *Maynard* line of cases.

These principles of appellate review were illustrated by our decision in *Barclay* v. *Florida,* 463 U. S. 939 (1983). Florida, like Mississippi, is a weighing State, *Parker* v. *Dugger, supra,* at 318, and the trial judge imposes the sentence based upon a recommendation from the jury. In *Barclay* the sentencing judge relied on an aggravating factor that was not a legitimate one under state law. We affirmed the sentence, but only because it was clear that the Florida Supreme Court had determined that the sentence would have been the same had the sentencing judge given no weight to the invalid factor. See 463 U. S., at 958 (plurality opinion); *id.,* at 973–974 (STEVENS, J., concurring in judgment). Therefore, contrary to the dissent's suggestion, *post,* at 245–247, the fact that both principal opinions in *Barclay* focused on the weight the sentencer gave to an invalid aggravating factor demonstrates that a reviewing court in a weighing State may not make the automatic assumption that such a factor has not infected the weighing process. In short, it may not make the automatic assumption that Stringer claims the Mississippi Supreme Court made in this case.

In view of the well-established general requirement of individualized sentencing and the more specific requirement that a sentence based on an improper factor be reassessed with care to assure that proper consideration was given, there was no arguable basis to support the view of the Court of Appeals that at the time petitioner's sentence became final the Mississippi Supreme Court was permitted to apply a rule of automatic affirmance to any death sentence supported by multiple aggravating factors, when one is invalid.

With respect to the function of a state reviewing court in determining whether the sentence can be upheld despite the use of an improper aggravating factor, the difference between a weighing State and a nonweighing State is not one of "semantics," as the Court of Appeals thought, *Stringer* v.

*Jackson*, 862 F. 2d, at 1115, but of critical importance. In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty. Assuming a determination by the state appellate court that the invalid factor would not have made a difference to the jury's determination, there is no constitutional violation resulting from the introduction of the invalid factor in an earlier stage of the proceedings. But when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence. This clear principle emerges not from any single case, as the dissent would require, *post*, at 243–247, but from our long line of authority setting forth the dual constitutional criteria of precise and individualized sentencing. Thus, the principal difference between the sentencing systems of Mississippi and Georgia, the different role played by aggravating factors in the two States, underscores the applicability of *Godfrey* and *Maynard* to the Mississippi system.

2

Although it made no similar argument in *Clemons* itself, the State contends now that before *Clemons* it was reasonable to believe there was no constitutional requirement to define aggravating factors with precision in the Mississippi system. It points to the fact that in order for a jury to find a defendant guilty of capital murder it must find that the crime fits within the narrow and precise statutory definition of that offense. Any additional consideration of aggravating factors during the sentencing phase, under this view, is of no constitutional significance because the requisite differentia-

tion among defendants for death penalty purposes has taken place during the jury's deliberation with respect to guilt. The State cites our decision in *Lowenfield* v. *Phelps*, 484 U. S. 231 (1988), in support of its analysis. But *Lowenfield*, arising under Louisiana law, is not applicable here and does not indicate that *Clemons* imposed a new rule.

In Louisiana, a person is not eligible for the death penalty unless found guilty of first-degree homicide, a category more narrow than the general category of homicide. 484 U. S., at 241. A defendant is guilty of first-degree homicide if the Louisiana jury finds that the killing fits one of five statutory criteria. See *id.*, at 242 (quoting La. Rev. Stat. Ann. § 14:30A (West 1986)). After determining that a defendant is guilty of first-degree murder, a Louisiana jury next must decide whether there is at least one statutory aggravating circumstance and, after considering any mitigating circumstances, determine whether the death penalty is appropriate. 484 U. S., at 242. Unlike the Mississippi process, in Louisiana the jury is not required to weigh aggravating against mitigating factors.

In *Lowenfield*, the petitioner argued that his death sentence was invalid because the aggravating factor found by the jury duplicated the elements it already had found in determining there was a first-degree homicide. We rejected the argument that, as a consequence, the Louisiana sentencing procedures had failed to narrow the class of death-eligible defendants in a predictable manner. We observed that "[t]he use of 'aggravating circumstances' is not an end in itself, but a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase." *Id.*, at 244–245. We went on to compare the Louisiana scheme with the Texas scheme, under which the required narrowing occurs at the guilt phase. *Id.*, at 245 (discussing *Jurek* v. *Texas*, 428 U. S.

262 (1976)). We also contrasted the Louisiana scheme with the Georgia and Florida schemes. 484 U. S., at 245.

The State's premise that the Mississippi sentencing scheme is comparable to Louisiana's is in error. The Mississippi Supreme Court itself has stated in no uncertain terms that, with the exception of one distinction not relevant here, its sentencing system operates in the same manner as the Florida system; and Florida, of course, is subject to the rule forbidding automatic affirmance by the state appellate court if an invalid aggravating factor is relied upon. In considering a *Godfrey* claim based on the same factor at issue here, the Mississippi Supreme Court considered decisions of the Florida Supreme Court to be the most appropriate source of guidance. In *Gilliard* v. *State*, 428 So. 2d 576, 586 (1983), the Mississippi Supreme Court compared the claim before it to the claim in *Dobbert* v. *State*, 375 So. 2d 1069 (Fla. 1979), cert. denied, 447 U. S. 912 (1980). The court stated:

> "In *Dobbert* . . . the Florida Supreme Court held that even though the lower court considered two circumstances which would not pass constitutional muster and did not amount to aggravating circumstances, there was one aggravating circumstance which existed and that it was sufficient to uphold the death penalty. The only distinction between *Dobbert* and the present case is that in *Dobbert,* under Florida law, the judge determined the sentence without a jury." *Gilliard, supra,* at 586.

Whether the Mississippi Supreme Court in *Gilliard* was adopting the kind of harmless-error rule we approved in *Barclay,* 463 U. S., at 958, and if so, whether it applied that same rule in Stringer's case, are questions relating to the merits of Stringer's claim which we need not consider here. What is dispositive is the fact that the Mississippi Supreme Court, which is the final authority on the meaning of Mississippi law, has at all times viewed the State's sentencing scheme as one in which aggravating factors are critical in

the jury's determination whether to impose the death penalty. See also *Evans* v. *State*, 422 So. 2d 737, 743 (Miss. 1982) (applying *Godfrey*). It would be a strange rule of federalism that ignores the view of the highest court of a State as to the meaning of its own law. See *Teague* v. *Lane*, 489 U. S., at 310 (discussing federalism as one of the concerns underlying the nonretroactivity principle).

As a matter of federal law, moreover, the view of the Mississippi Supreme Court that *Godfrey*'s dictates apply to its capital sentencing procedure is correct. Indeed, it is so evident that the issue was not even mentioned in *Clemons*. There we took for granted, and the State did not challenge, the proposition that if a State uses aggravating factors in deciding who shall be eligible for the death penalty or who shall receive the death penalty, it cannot use factors which as a practical matter fail to guide the sentencer's discretion. See *Clemons*, 494 U. S., at 756, n. 1 (opinion of BLACKMUN, J., joined by Brennan, Marshall, and STEVENS, JJ., concurring in part and dissenting in part) (noting that the unconstitutionality of the vague aggravating factor is implicit in the Court's opinion).

Even were we free to ignore the Mississippi Supreme Court's understanding of the way its own law works, we would reject the suggestion that *Lowenfield* could form the basis for an argument that *Godfrey* does not apply to Mississippi. Although our precedents do not require the use of aggravating factors, they have not permitted a State in which aggravating factors are decisive to use factors of vague or imprecise content. A vague aggravating factor employed for the purpose of determining whether a defendant is eligible for the death penalty fails to channel the sentencer's discretion. A vague aggravating factor used in the weighing process is in a sense worse, for it creates the risk that the jury will treat the defendant as more deserving of the death penalty than he might otherwise be by relying upon the existence of an illusory circumstance. Because the

use of a vague aggravating factor in the weighing process creates the possibility not only of randomness but also of bias in favor of the death penalty, we cautioned in *Zant* that there might be a requirement that when the weighing process has been infected with a vague factor the death sentence must be invalidated.

Nothing in *Lowenfield* suggests that the proscription of vague aggravating factors does not apply to a capital sentencing system like Mississippi's. *Lowenfield* did not involve a claim that a statutory aggravating factor was ambiguous, and its relevance to *Godfrey*, which it did not find it necessary to cite, or the line of cases following from *Godfrey*, is slight at best.

We also note that the State's reliance on *Lowenfield* to show that it could not have anticipated *Godfrey*'s application to Mississippi is somewhat odd. For *Lowenfield*, after all, was decided when the petitioner's conviction and sentence already were final. It is a fiction for the State to contend that in 1984 its courts relied on a 1988 decision. This is not to say that a State could not rely on a decision announced after a petitioner's conviction and sentence became final to defeat his claim on the merits. It could. Insofar as our new rule jurisprudence "validates reasonable, good-faith interpretations of existing precedents," *Butler* v. *McKellar*, 494 U. S., at 414, however, the State may have little cause to complain if in deciding to allow a petitioner to rely upon a decision the federal courts look only to those precedents which the state courts knew at the relevant time. In any event, we need not dwell on the anachronism inherent in the State's *Lowenfield* argument because, as we have concluded, that case does not provide a basis for concluding that it was a new rule to apply *Godfrey* to the Mississippi system.

The State next argues that *Clemons*' application of *Godfrey* to Mississippi could not have been dictated by precedent because prior to *Clemons* the Fifth Circuit concluded that *Godfrey* did not apply to Mississippi. See *Evans* v. *Thigpen*,

809 F. 2d 239, cert. denied, 483 U. S. 1033 (1987); *Johnson* v. *Thigpen,* 806 F. 2d 1243 (1986), cert. denied, 480 U. S. 951 (1987). Before addressing the merits of this argument we reiterate that the rationale of the Fifth Circuit has not been adopted by the Mississippi Supreme Court, which, as a state court, is the primary beneficiary of the *Teague* doctrine. The Mississippi Supreme Court has recognized that it is bound by *Godfrey.* See, *e. g., Mhoon* v. *State,* 464 So. 2d 77, 85 (1985) (requiring, based on *Godfrey,* that a capital sentencing jury be given a narrowing construction of the "heinous, atrocious or cruel" factor).

The Fifth Circuit's pre-*Clemons* views are relevant to our inquiry, see *Butler, supra,* at 415, but not dispositive. The purpose of the new rule doctrine is to validate reasonable interpretations of existing precedents. Reasonableness, in this as in many other contexts, is an objective standard, and the ultimate decision whether *Clemons* was dictated by precedent is based on an objective reading of the relevant cases. The short answer to the State's argument is that the Fifth Circuit made a serious mistake in *Evans* v. *Thigpen* and *Johnson* v. *Thigpen.* The Fifth Circuit ignored the Mississippi Supreme Court's own characterization of its law and accorded no significance to the fact that in Mississippi aggravating factors are central in the weighing phase of a capital sentencing proceeding. As we have explained, when these facts are accorded their proper significance, the precedents even before *Maynard* and *Clemons* yield a well-settled principle: Use of a vague or imprecise aggravating factor in the weighing process invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing in the state judicial system.

We reverse the decision of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE SOUTER, with whom JUSTICE SCALIA and JUSTICE THOMAS join, dissenting.

Today the Court holds that no reasonable jurist could have believed in 1985, two years after *Zant* v. *Stephens*, 462 U. S. 862 (1983), that the holding of that case would apply to a so-called "weighing" State. The Court maintains, on the contrary, that in 1985 it was obvious that a sentencer's weighing of a vague aggravating circumstance deprives a defendant of individualized sentencing. While that may be obvious after *Maynard* v. *Cartwright*, 486 U. S. 356 (1988), I submit that was not so before this Court decided that case. I respectfully dissent.

I

Under the principle first announced in *Teague* v. *Lane*, 489 U. S. 288 (1989), a prisoner seeking habeas corpus relief in federal court generally cannot benefit from a new rule announced after the prisoner's conviction became final, *id.*, at 301 (plurality opinion), that is, after exhausting all direct appeals, see *Penry* v. *Lynaugh*, 492 U. S. 302, 314 (1989). A decision announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague, supra*, at 301 (plurality opinion) (emphasis omitted). The result in a given case is not dictated by precedent if it is "susceptible to debate among reasonable minds," *Butler* v. *McKellar*, 494 U. S. 407, 415 (1990), or, put differently, if "reasonable jurists may disagree," *Sawyer* v. *Smith*, 497 U. S. 227, 234 (1990).

Petitioner's conviction became final for *Teague* purposes on February 19, 1985. He now claims the benefit of the rule that an Eighth Amendment violation occurs when a sentencer in a weighing State considers a vague aggravating circumstance, even if the sentencer has also found the existence of at least one other aggravating circumstance that is neither vague nor otherwise infirm. Because this Court never endorsed that position before February 19, 1985, I will discuss the relevant pre-1985 decisions, *infra*, Part I–A, and

the post-1985 decisions that, implicitly at least, announced the rule petitioner invokes, *infra*, Part I–B. Finally, I will enquire whether this rule was dictated by the pre-1985 decisions, *infra*, Part II.

### A

The cases determining the apposite law before 1985 start with *Godfrey* v. *Georgia*, 446 U. S. 420 (1980). Under the Georgia sentencing scheme, a defendant is given a life sentence unless the jury finds one or more aggravating circumstances. Once the jury does that, aggravating circumstances no longer play a role: the jury is instructed to determine whether the defendant should receive a death sentence by considering all the evidence in aggravation and in mitigation. The jury is not instructed to weigh any aggravating circumstances against mitigating circumstances. In *Godfrey*, a Georgia jury had returned a death verdict on the strength of just one aggravating circumstance, that the murder was "outrageously or wantonly vile, horrible and inhuman." *Id.*, at 426 (plurality opinion). Saying that "[a] person of ordinary sensibility could fairly categorize almost every murder as 'outrageously or wantonly vile, horrible and inhuman,'" *id.*, at 428–429, this Court held that this circumstance failed to impose any "restraint on the arbitrary and capricious infliction of the death sentence," *id.*, at 428. Accordingly, Georgia's sentencing scheme, as applied, violated the Eighth Amendment in the same way as the scheme struck down in *Furman* v. *Georgia*, 408 U. S. 238 (1972): it failed to "provide a meaningful basis for distinguishing the few cases in which [the penalty] is imposed from the many cases in which it is not." 446 U. S., at 427 (internal quotation marks omitted).

After *Godfrey* came *Zant* v. *Stephens*, 462 U. S. 862 (1983), arising from a Georgia jury's death verdict based on a showing of several aggravating circumstances, one of which was that respondent had "a substantial history of serious assaultive criminal convictions," *id.*, at 866. Shortly after respond-

ent's sentencing, the Supreme Court of Georgia, in a different case, held that the "substantial history" circumstance left "a wide latitude of discretion in a jury as to whether or not to impose the death penalty," rendering a death sentence imposed upon the strength of the "substantial history" circumstance alone unconstitutional under *Furman*. *Arnold* v. *State*, 236 Ga. 534, 541, 224 S. E. 2d 386, 392 (1976). The Supreme Court of Georgia nevertheless refused to vacate Stephens' sentence, holding it adequately supported by the other, unchallenged, aggravating circumstances. *Stephens* v. *State*, 237 Ga. 259, 261–262, 227 S. E. 2d 261, 263, cert. denied, 429 U. S. 986 (1976). This Court agreed, holding *Godfrey* to be distinguishable because, in that case, the single aggravating circumstance failed to narrow the class of persons eligible for the death penalty, as required by the Eighth Amendment, 462 U. S., at 878, while in *Stephens*, the remaining aggravating circumstances properly discharged the narrowing obligation, *id.*, at 879. The vagueness of one among several aggravating circumstances was therefore held to be irrelevant, and the scheme itself adequate under *Furman*, 462 U. S., at 888–889, so long as it included mandatory appellate review for any arbitrariness or disproportionality stemming from some other source, *id.*, at 890.

The last relevant pre-1985 decision is *Barclay* v. *Florida*, 463 U. S. 939 (1983). The Florida scheme, like the one in Georgia, requires the sentencer to impose a life sentence if it finds no aggravating circumstances present. But, unlike Georgia, Florida is a weighing State, in which the sentencer who finds that one or more aggravating circumstances exist must determine the sentence by weighing aggravating and mitigating circumstances. In *Barclay*, a judge had imposed a death sentence after finding several aggravating circumstances, one of which was that the petitioner had a criminal record, *id.*, at 944–945, which Florida law did not recognize as an aggravating circumstance, *id.*, at 946. This Court held that the resulting death sentence did not violate the Eighth

Amendment, for the same reason the sentence in *Stephens* did not: the remaining aggravating circumstances satisfied the Eighth Amendment's narrowing requirement. See *id.*, at 957 (plurality opinion); *id.*, at 966–967 (STEVENS, J., concurring in judgment); see also *id.*, at 947–948, n. 5 (plurality opinion) (distinguishing *Godfrey* as involving only one aggravating circumstance).

## B

The first case in which this Court applied the rule from which petitioner seeks to benefit was *Maynard v. Cartwright*, 486 U. S. 356 (1988). There, an Oklahoma jury had found the presence of two aggravating circumstances, one of which was that the murder was "especially heinous, atrocious, or cruel." Because Oklahoma is a weighing State, the trial court had instructed the jury that, in determining the penalty, it should weigh these aggravating circumstances against any mitigating circumstances, and the jury had eventually returned a verdict of death. On collateral review, the Court of Appeals for the Tenth Circuit held that the "heinous, atrocious, or cruel" circumstance without further instruction was vague in the *Godfrey* sense. See *Cartwright v. Maynard*, 822 F. 2d 1477, 1485–1491 (1987) (en banc). Distinguishing *Stephens*, the Court of Appeals held that this vagueness amounted to an Eighth Amendment violation because Oklahoma was a weighing State, 822 F. 2d, at 1480.[1] It vacated Cartwright's sentence, noting that Oklahoma's highest court had failed to cure the constitutional defect by either reweighing or performing harmless-error review, *id.*, at 1482.

This Court affirmed, holding that *Godfrey* controlled because the "especially heinous, atrocious, or cruel" circumstance gave no more guidance than the "outrageously or

---

[1] There are only hints in its opinion of the reason this distinction made a difference. See 822 F. 2d, at 1480–1481 (individualized sentencing); *id.*, at 1485 (narrowing).

wantonly vile, horrible and inhuman" circumstance in *Godfrey,* 486 U. S., at 363–364. The Court rejected Oklahoma's argument that Cartwright's sentence was adequately supported by the unchallenged aggravating circumstance, observing that Oklahoma's highest court had a practice of not attempting to "save the death penalty when one of several aggravating circumstances . . . was found invalid," *id.,* at 365. (Instead, that court would simply commute any death sentence imposed after finding an "invalid" aggravating circumstance into a sentence of life imprisonment, see *id.,* at 359.) The Court said that "the Court of Appeals cannot be faulted for not itself undertaking what the state courts themselves refused to do," *id.,* at 365.

*Cartwright* was followed by *Clemons* v. *Mississippi,* 494 U. S. 738 (1990). Like Oklahoma, Mississippi is a weighing State, and a jury had returned a death verdict finding that two aggravating circumstances were present (one of which had been that the crime was "especially heinous, atrocious, or cruel"), and finding that these two aggravating circumstances outweighed any mitigating circumstances. The Supreme Court of Mississippi had affirmed, distinguishing *Cartwright* on the ground, *inter alia,* that, while Oklahoma had no procedure for salvaging a death sentence resting in part on a vague aggravating circumstance, there was an established procedure in Mississippi. "[W]hen one aggravating circumstance is found to be invalid . . . , a remaining valid aggravating circumstance will nonetheless support the death penalty verdict." 494 U. S., at 743–744 (internal quotation marks omitted). In this Court, Clemons argued that where a jury had originally imposed a death sentence, the Constitution demanded resentencing by a jury whenever a state appellate court found that the jury had considered an unconstitutionally vague aggravating circumstance. *Id.,* at 744. This Court rejected the argument, saying that nothing in the Constitution forbade a state appellate court to salvage an unconstitutional sentence, *id.,* at 745–750, although, at a

minimum, the state appellate court would have to reweigh or perform harmless-error review, *id.*, at 751–752.

In rejecting a more relaxed rule "authorizing or requiring affirmance of a death sentence so long as there remains at least one valid aggravating circumstance," the Court explained:

> "An automatic rule of affirmance in a weighing State would be invalid under *Lockett* v. *Ohio*, 438 U. S. 586 (1978), and *Eddings* v. *Oklahoma*, 455 U. S. 104 (1982), for it would not give defendants the individualized treatment that would result from actual reweighing of the mix of mitigating factors and aggravating circumstances. Cf. *Barclay* v. *Florida,* [*supra,* at 958]." *Id.,* at 752.

See also *Parker* v. *Dugger*, 498 U. S. 308, 321–322 (1991).

Today the Court adds to *Clemons'* explanation by reasoning that a sentencer's weighing of a vague aggravating circumstance deprives the defendant of individualized sentencing because it "creates the possibility . . . of randomness." *Ante*, at 236. The Court says that a sentencer's weighing of a vague aggravating circumstance may "ske[w]" the weighing process, *ante*, at 232, by placing a "thumb [on] death's side of the scale," *ibid.*, by "creat[ing] the risk [of] treat[ing] the defendant as more deserving of the death penalty," *ante*, at 235–236, or by "creat[ing] the possibility . . . of bias in favor of the death penalty," *ibid.*[2]

## II

Like Godfrey and Stephens, the petitioner in the instant case was sentenced to death after a finding of a vague aggra-

---

[2] The mere fact that an aggravating circumstance inclines a sentencer more towards imposing the death penalty cannot, of course, violate the Eighth Amendment. I therefore read the majority opinion to object to the weighing of vague aggravating circumstances only because they skew the operation of the scheme by their random application from case to case.

vating circumstance. Like Stephens, but unlike Godfrey, he was sentenced on the basis of more than one aggravating circumstance, only one of which he challenged. The issue in this case, then, is whether it would have been reasonable to believe in 1985 that a sentencer's weighing of a vague[3] aggravating circumstance does not offend the Eighth Amendment so long as the sentencer has found at least one other valid aggravating circumstance.[4] Put differently, the question is whether it would have been reasonable to believe in 1985 that the holding in *Stephens* could apply to a weighing State. The majority answers these questions in the negative, saying that in 1985, no reasonable jurist could have failed to discover a concern with randomness in this Court's individualized-sentencing cases, or have failed to realize that a sentencer's weighing of a vague aggravating circumstance deprives a defendant of individualized sentencing. I think this answer endues the jurist with prescience, not reasonableness.

It is true that the Court in *Stephens* reserved judgment on the question whether its holding would apply to a weighing State:

---

[3] I say vague and not, as the majority does, invalid, see *ante*, at 230, 231. There might indeed have been invalid aggravating circumstances whose consideration, even with one or more valid ones, would have tainted an ensuing death sentence in any reasonable view in 1985. Thus, it would have been unreasonable to believe in 1985 that a capital sentence could stand, without more, if the sentencer had been instructed, say, to consider constitutionally protected behavior in aggravation. See *Barclay* v. *Florida*, 463 U. S. 939, 956 (1983) (plurality opinion); *Zant* v. *Stephens*, 462 U. S. 862, 885 (1983). But I would apply that proposition to weighing and nonweighing States alike.

[4] Because, in this case, valid aggravating circumstances remained, I need not discuss respondents' argument that it was reasonable to believe in 1985 that the Mississippi murder statute performed all constitutionally required narrowing in the guilt phase of petitioner's trial. Cf. *Lowenfield* v. *Phelps*, 484 U. S. 231 (1988).

"[I]n deciding this case we do not express any opinion concerning the possible significance of a holding that a particular aggravating circumstance is 'invalid' under a statutory scheme in which the judge or jury is specifically instructed to weigh statutory aggravating and mitigating circumstances in exercising its discretion whether to impose the death penalty." 462 U. S., at 890.

I agree that this statement would have put a reasonable jurist on notice that *Stephens*' rule might not apply to a weighing State, but the answer to the question reserved was no foregone conclusion. It is worth remembering that the Georgia jury in *Stephens* was instructed simply to "conside[r]" all aggravating and mitigating evidence, see *id.*, at 871, leaving it with what the respondent described as "unbridled discretion" at the final stage of sentencing, *id.*, at 875, which this Court found to be no violation of the Eighth Amendment, *id.*, at 875–880. If unguided discretion created no risk of randomness, it was hardly obvious that this risk arose when a vague aggravating circumstance was weighed. To conclude after *Stephens* that the outcome in *Cartwright* and *Clemons* was dictated is a leap of reason.

The leap lengthens when one considers *Barclay*, for I think a reasonable jurist, in 1985, could have concluded that this Court resolved the question reserved in *Stephens* when it decided *Barclay*, which strongly implied that the *Stephens* principle applied to weighing States like Florida. See 463 U. S., at 957 (plurality opinion); *id.*, at 966–967 (STEVENS, J., concurring in judgment). The majority attempts to minimize *Barclay* by saying that the *Barclay* Court upheld the sentence "only because it was clear that the Florida Supreme Court had determined that the sentence would have been the same had the sentencing judge given no weight to the invalid factor." *Ante*, at 231 (citing 463 U. S., at 958 (plurality opinion)). But I do not think *Barclay* can be explained away so easily.

It is true that the plurality opinion noted that the Supreme Court of Florida performed harmless-error review. *Ibid.* But the opinion's discussion of this point merely responded to Barclay's argument that the Supreme Court of Florida had failed to apply state-law precedent properly, which, Barclay maintained, required harmless-error review. See *id.,* at 957. The plurality rejected that argument, saying that failure to apply those cases would be "mere errors of state law [that] are not the concern of this Court," and that, in any event, the Supreme Court of Florida had, contrary to petitioner's assertions, performed harmless-error review. *Id.,* at 957–958. Nothing in the plurality's opinion suggests that harmless-error review would be constitutionally required where the sentencer had weighed an "invalid" aggravating circumstance.

It is also true that the concurrence of JUSTICE STEVENS and Justice Powell, who cast the deciding votes in *Barclay,* stated that Florida law required the Supreme Court of Florida to reweigh aggravating and mitigating circumstances. See *id.,* at 974 (opinion concurring in judgment). But that simply responded to Barclay's argument that the Supreme Court of Florida failed to perform the quantum of appellate review that the Constitution requires in every capital case (regardless of whether the trial court commits state-law error). See *id.,* at 972–973. JUSTICE STEVENS' opinion merely noted that the principal opinion in *Proffitt* v. *Florida,* 428 U. S. 242, 253 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.), had held that reweighing satisfied the appellate-review obligation imposed by the Constitution. 463 U. S., at 974. JUSTICE STEVENS never said that reweighing would be the constitutionally required minimum where the sentencer had weighed an "invalid" aggravating circumstance.

Although *Barclay* may be read as assuming that some appellate test must be passed if a death verdict is to stand in a weighing State despite the finding of an invalid aggravating

circumstance, nowhere do the opinions state that the State Supreme Court's mandated proportionality review would not satisfy the required constitutional minimum. See *Proffitt, supra,* at 258 (joint opinion of Stewart, Powell, and STEVENS, JJ.) ("The Supreme Court of Florida reviews each death sentence to ensure that similar results are reached in similar cases"). Mississippi law requires just such review. See *ante,* at 226.

In sum, after *Barclay,* a jurist mindful of the *Stephens* caveat could reasonably have assumed that weighing one invalid aggravating circumstance along with one or more valid ones need not be treated as significant enough to amount to constitutional error in a State that at least provided appellate review for proportionality. That is dispositive under *Teague:* a reasonable reading of *Barclay* bars the conclusion that the result in *Cartwright* and *Clemons* was dictated by the cases on our books in 1985.

The Fifth Circuit, indeed, held as recently as 1988 that the rule in *Stephens* applied to a weighing State. See *Stringer* v. *Jackson,* 862 F. 2d 1108, 1115 (1988); *Edwards* v. *Scroggy,* 849 F. 2d 204, 211 (1988).[5] The conflict between its view and that of the Tenth Circuit, see *Cartwright* v. *Maynard,* 822 F. 2d 1477, 1480 (1987) (en banc), is itself evidence that it was not unreasonable to believe in 1985 that *Stephens* would govern the result in this case. See *Butler* v. *McKellar,* 494 U. S., at 415. Nor, in light of my analysis, can the Fifth Circuit's opinion be dismissed as having "no arguable basis to support" the view expressed, *ante,* at 231.

### III

In sum, I do not think that precedent in 1985 dictated the rule that weighing a vague aggravating circumstance neces-

---

[5] This was after we announced *Cartwright.* The Fifth Circuit distinguished that case in the same way the Supreme Court of Mississippi distinguished *Cartwright* in *Clemons.* See *Stringer,* 862 F. 2d, at 1113; *Edwards,* 849 F. 2d, at 211, n. 7.

sarily violates the Eighth Amendment as long as there is a finding of at least one other, unobjectionable, aggravating circumstance. It follows that I think it was reasonable to believe that neither reweighing nor harmless-error review would be required in that situation.