Justice Breyer,
with whom Justice Ginsburg joins,
dissenting.
The question before us is whether California’s approach to imposing the death penalty makes California a “weighing” or a “nonweighing” State for purposes of determining whether to apply “harmless-error” review in a certain kind of death case — namely, a case in which the death sentence rests in part on an invalid aggravating circumstance. In my view, it does not matter whether California is a “weighing” or a “nonweighing” State, as ordinary rules of appellate review should apply. A reviewing court must find that the jury’s consideration of an invalid aggravator was harmless beyond a reasonable doubt, regardless of the form a State’s death penalty law takes.
I
To understand my answer, one must fully understand the question, including the somewhat misleading terminology in which the question is phrased.
A
Death penalty proceedings take place in two stages. At the first stage, the jury must determine whether there is something especially wrongful, i. e., “aggravating,” about the defendant’s conduct. State statutes typically list these spe *229 cific “aggravating” factors, and the jury typically must find at least one such factor present for the defendant to become eligible for the death penalty. “By doing so, the jury narrows the class of persons eligible for the death penalty according to an objective legislative definition,” as required by the Eighth Amendment. Lowenfield v. Phelps, 484 U. S. 231, 244 (1988). If the jury finds that an aggravating factor is present and the defendant is consequently eligible for the death penalty, it proceeds to Stage Two. At Stage Two, the jury (or sometimes the judge) must determine whether to sentence the defendant to death or to provide a different sentence (usually, life imprisonment). At this stage, this Court has said, States divide as to their approach.
Weighing States. Some States tell the jury: “Consider all the mitigating factors and weigh them against the specific aggravating factors that you found, at Stage One, made the defendant eligible for the death penalty. If the aggravating factors predominate, you must sentence the defendant to death; otherwise, you may not.” Because the law in these States tells the jury to weigh only statutory aggravating factors (typically the same factors considered at Stage One) against the mitigating factors, this Court has called these States “weighing States.” This is something of a misnomer because the jury cannot weigh everything but is instead limited to weighing certain statutorily defined aggravating factors. The Court has identified Mississippi as a classic example of a weighing State. See Stringer v. Black, 503 U. S. 222, 229 (1992).
Nonweighing States. Other States tell the jury: “Consider all the mitigating factors and weigh them, not simply against the statutory aggravating factors you previously found at Stage One, but against any and all factors you consider aggravating.” Because the balance includes all aggravating factors and not only those on the Stage One eligibility list, this Court has called such States “nonweighing States.” Although it might be clearer to call these States “complete *230 weighing” States (for the jury can weigh everything that is properly admissible), I shall continue to use the traditional terminology. The Court has identified Georgia as the prototypical example of a State that has adopted this complete weighing approach. Ibid.
B
The question in this case arises under the following circumstances.
(1) At Stage One, a jury found several aggravating factors, the presence of any one of which would make the defendant eligible for the death penalty.
(2) At least one of those aggravating factors was an “improper” factor, i. e., a factor that the law forbids the jury from considering as aggravating and that the jury’s use of which (for this purpose) was later invalidated on appeal. The sentencing court made a mistake, indeed a mistake of constitutional dimensions, when it listed the “heinous, atrocious, or cruel,” Cal. Penal Code Ann. § 190.2(a)(14) (West Supp. 2005), aggravating factor as one of the several factors for the jury to consider at Stage One. See Godfrey v. Georgia, 446 U. S. 420, 433 (1980) (plurality opinion). But that mistake did not, in and of itself, forbid application of the death penalty. After all, the jury also found other listed aggravating factors, the presence of any one of which made the defendant eligible for the death penalty.
(3) All the evidence before the sentencing jury at Stage Two was properly admittéd. The evidence that supported the improper heinousness factor, for example, also showed how the crime was committed, and the jury is clearly entitled to consider it.
Given this outline of the problem, two questions follow. Question One: Is it possible that the judge’s legal mistake at Stage One — telling the jury that it could determine that the “heinous, atrocious, or cruel” aggravator was present — prejudiced the jury’s decisionmaking at Stage Two? In other words, could that mistake create harmful error, causing the *231 jury to impose a death sentence due to the fact that it was told to give special weight to its heinousness finding? The lower courts have read this Court’s opinions to say that in a nonweighing State the answer must be “no”; but in a weighing State the answer might be “yes.”
Question Two: Given the lower courts’ answer to Question One, is California a nonweighing State? If so, the reviewing court can assume, without going further, that the error arising out of the sentencing judge’s having listed an invalid ag-gravator was harmless. Or is California a weighing State? If so, the reviewing court should have gone further and determined whether the error was in fact harmless.
I would answer Question Two by holding that the lower courts have misunderstood this Court’s answer to Question One. Despite the Court’s occasional suggestion to the contrary, the weighing/nonweighing distinction has little to do with the need to determine whether the error was harmless. Moreover, given “the ‘acute need’ for reliable decisionmaking when the death penalty is at issue,” Deck v. Missouri, 544 U. S. 622, 632 (2005), reviewing courts should decide if that error was harmful, regardless of the form a State’s death penalty law takes.
II
To distinguish between weighing and nonweighing States for purposes of determining whether to apply harmless-error analysis is unrealistic, impractical, and legally unnecessary.
A
Use of the distinction is unrealistic because it is unrelated to any plausible conception of how a capital sentencing, jury actually reaches its decision. First, consider the kind of error here at issue. It is not an error about the improper admission of evidence. See infra, at 239-241. It is an error about the importance a jury might attach to certain admissible evidence. Using the metaphor of a “thumb on death’s side of the scale,” we have identified the error as the “possi *232 bility not only of randomness but also of bias in favor of the death penalty.” Stringer v. Black, 503 U. S., at 236; see Sochor v. Florida, 504 U. S. 527, 532 (1992) (“Employing an invalid aggravating factor in the weighing process creates the possibility of randomness by placing a thumb on death’s side of the scale, thus creating the risk of treating the defendant as more deserving of the death penalty” (internal quotation marks, citations, and alterations omitted)).
Second, consider why that error could affect a decision to impose death. . If the error causes harm, it is because a jury has given special weight to its finding of (or the evidence that shows) the invalid “aggravating factor.” The jury might do so because the judge or prosecutor led it to believe that state law attaches particular importance to that factor: Indeed, why else would the State call that factor an “aggravator” and/or permit it to render a defendant death eligible? See Zant v. Stephens, 462 U. S. 862, 888 (1983) (recognizing that statutory label “arguably might have caused the jury to give somewhat greater weight to respondent’s prior criminal record than it otherwise would have given”); see also ante, at 226 (Stevens, J., dissenting) (noting that jury may consider the aggravating label “a legislative imprimatur on a decision to impose death and therefore give greater weight to its improper heinousness finding . . . ”); Clemons v. Mississippi, 494 U. S. 738, 753, 755 (1990) (noting that the prosecutor “repeatedly emphasized and argued the ‘especially heinous’ factor during the sentencing hearing” and remanding for the Mississippi Supreme Court to conduct harmless-error review).
The risk that the jury will give greater weight at Stage Two to its Stage One finding of an aggravating factor — a factor that, it turns out, never should have been found in the first instance — is significant in a weighing State, for the judge will explicitly tell the jury to consider that particular aggravating factor in its decisionmaking process. That risk may prove significant in a nonweighing State as well, for *233 there too the judge may tell the jury to consider that aggravating factor in its decisionmaking process.
The only difference between the two kinds of States is that, in the nonweighing State, the jury can also consider other aggravating factors (which are usually not enumerated by statute). Cf. Ga. Code Ann. § 17-10-30(b) (2004) (judge or jury “shall consider . . . any mitigating circumstances or aggravating circumstances otherwise authorized by law and any of the following statutory aggravating circumstances which may be supported by the evidence” (emphasis added)). But the potential for the same kind of constitutional harm exists in both kinds of States, namely, that the jury will attach special weight to that aggravator on the scale, the ag-gravator that the law says should not have been there.
To illustrate this point, consider the following two statements. Statement One — The judge tells the jury in a weighing State: “You can sentence the defendant to death only if you find one, or more, of the following three aggravating circumstances, X, Y, or Z. If you do, the law requires you to consider those aggravators and weigh them against the mitigators.” Statement Two — The judge tells the jury in a nonweighing State: “You can sentence the defendant to death only if you find one, or more, of the following three aggravating circumstances, X, Y, or Z. If you do, the law permits you to consider all mitigating and aggravating evidence, including X, Y, and Z, in reaching your decision.”
What meaningful difference is there between these two statements? The decisionmaking process of the first jury and that of the second jury will not differ significantly: Both juries will weigh the evidence offered in aggravation and the evidence offered in mitigation. Cf. Brief for Criminal Justice Legal Foundation as Amicus Curiae 4 (“In reality, all sentencers ‘weigh’ ”). If Statement One amounts to harmful error because the prosecutor emphasized the importance of wrongfully listed factor Y, why would Statement Two not amount to similarly harmful error? In both instances, a *234 jury might put special weight upon its previous finding of factor Y. It is not surprising that commentators have found unsatisfactory the Court’s efforts to distinguish between the two statements for harmless-error purposes. See, e. g., Steiker & Steiker, Sober Second Thoughts: Reflections on Two Decades of Constitutional Regulation of Capital Punishment, 109 Harv. L. Rev. 355, 386-387 (1995) (“[T]he different doctrinal approaches to ‘weighing’ and ‘non-weighing’ schemes are difficult to justify given that the sentencer’s de-cisionmaking process is likely to be similar under either scheme”); Widder, Hanging Life in the Balance: The Supreme Court and the Metaphor of Weighing in the Penalty Phase of the Capital Trial, 68 Tulane L. Rev. 1341,1363-1365 (1994) (arguing that the distinction is largely an “illusion” that “appears to be derived from a fixation on the literal meaning of the metaphor of weighing, [which] remains a common means of describing the capital sentencing process even in decisions of state courts that rely on the non-weighing status of their statutory schemes to uphold [death] sentences resting on invalid factors”).
B
The distinction is impractical to administer for it creates only two paradigms — States that weigh only statutory ag-gravators and States that weigh any and all circumstances (i. e., statutory and nonstatutory aggravators). Many States, however, fall somewhere in between the two paradigms. A State, for example, might have a set of aggravating factors making a defendant eligible for the death penalty and an additional set of sentencing factors (unrelated to the eligibility determination) designed to channel the jury’s discretion. California is such a State, as it requires the jury to take into account the eligibility-related aggravating factors and 11 other sentencing factors — including an omnibus factor that permits consideration of all of the circumstances of the crime. Cal. Penal Code Ann. § 190.3 (West 1999). And be *235 cause many States collapse Stage One (eligibility) and Stage Two (sentence selection) into a single proceeding in which the jury hears all of the evidence at the same time, those States permit the prosecution to introduce and argue any relevant evidence, including evidence related to the statutory aggravators. Indeed, one State the Court has characterized as a weighing State (Mississippi) and one State the Court has characterized as a nonweighing State (Virginia) both fall into this intermediate category. Miss. Code Ann. §99-19-101 (1978-2000); Va. Code Ann. § 19.2-264.4(B) (Lexis 2004). Efforts to classify these varied schemes, for purposes of applying harmless-error analysis, produce much legal heat while casting little light.
C
Our precedents, read in detail, do not require us to maintain this unrealistic and impractical distinction. The Court has discussed the matter in three key cases. In the first case, Zant v. Stephens, the Court considered an error that arose in Georgia, a nonweighing State. The Georgia Supreme Court had held that one of several statutory aggravating circumstances found by the jury — that the defendant had a “ ‘substantial history of serious assaultive criminal convictions’” — was unconstitutionally vague. 462 U. S., at 867, and n. 5. The jury, however, had also found other aggrava-tors present, so the defendant remained eligible for death. The Georgia Supreme Court concluded that the sentencing court’s instruction on the unconstitutional factor, though erroneous, “had ‘an inconsequential impact on the jury’s decision regarding the death penalty.’” Id., at 889 (quoting Zant v. Stephens, 250 Ga. 97, 100, 297 S. E. 2d 1, 4 (1982)).
This Court agreed with the Georgia Supreme Court’s conclusion.. The Court conceded that the label — “aggravating circumstance” — created the risk that the jury might place too much weight on the evidence that showed that aggravator. Indeed, it said that the statutory label “‘aggravating circumstance^]’ ” might “arguably ... have caused the jury *236 to give somewhat greater weight to respondent’s prior criminal record than it otherwise would have given.” 462 U. S., at 888. But the Court concluded that, under the circumstances, the error was harmless. For one thing, Georgia’s statute permitted the jury to consider more than just the specific aggravators related to Stage One. See id., at 886. For another thing, the trial court’s “instructions did not place particular emphasis on the role of statutory aggravating circumstances in the jury’s ultimate decision.” Id., at 889 (citation omitted). In fact, it specifically told the jury to “‘consider all facts and circumstances presented in extenuation . . . , mitigation and aggravation.’” Ibid. Finally, there was no indication at all that either the judge or the prosecutor tried to single out the erroneous aggravator for special weight. Because under the circumstances there was no real harm, the Court concluded that “any possible impact cannot fairly be regarded as a constitutional defect in the sentencing process.” Ibid.
The Court in Zant did not say that the jury’s consideration of an improper aggravator is never harmless in a State like Georgia. It did say that the jury’s consideration of the improper aggravator was harmless under the circumstances of that case. And the Court’s detailed discussion of the jury instructions is inconsistent with a rule of law that would require an automatic conclusion of “harmless error” in States with death penalty laws like Georgia’s. See id., at 888-889, and n. 25; see also id., at 891 (“Under Georgia’s sentencing scheme, and under the trial judge’s instructions in this case, no suggestion is made that the presence of more than one aggravating circumstance should be given special weight” (emphasis added)).
Hie dissent in Zant also clearly understood the principal opinion to have conducted a harmless-error analysis. Id., at 904-905 (opinion of Marshall, J., joined by Brennan, J.). And the Court repeated this same understanding in a case decided only two weeks later. Barclay v. Florida, 463 U. S. 939, 951, n. 8 (1983) (plurality opinion) (upholding death sen *237 tence and concluding that “we need not apply the type of federal harmless-error analysis that was necessary in Zant,:").
The second case, Clemons v. Mississippi, involved a weighing State, Mississippi. The Mississippi Supreme Court upheld the petitioner’s death sentence “even though the jury instruction regarding one of the aggravating factors pressed by the State, that the murder was ‘especially heinous, atrocious, or cruel,’ was constitutionally invalid.” 494 U. S., at 741. Finding it unclear whether the state court reweighed the aggravating and mitigating evidence or conducted harmless-error review, the Court vacated and remanded to the Mississippi Supreme Court to conduct either procedure (or to remand to a sentencing jury) in the first instance. Id., at 754.
As far as the Court’s “harmless-error” analysis reveals, the reason the Court remanded — the reason it thought the error might not be harmless — had nothing to do with the fact that Mississippi was a so-called weighing State. Cf. ante, at 218-219, n. 3. Rather, the Court thought the error might be harmful because “the State repeatedly emphasized and argued the ‘especially heinous’ factor during the sentencing hearing,” in stark contrast to the “little emphasis” it gave to the other valid aggravator found by the jury. 494 U. S., at 753. The Court concluded that, “[u]nder these circumstances, it would require a detailed explanation based on the record for us possibly to agree that the error in giving the invalid ‘especially heinous’ instruction was harmless.” Id., at 753-754.
The third case, Stringer v. Black, presented a different kind of question: For the purposes of Teague v. Lane, 489 U. S. 288 (1989), does the rule that a vague aggravating circumstance violates the Eighth Amendment apply to a weighing State like Mississippi in the same way it applies to a nonweighing State like Georgia? The Court answered this question “yes.” In so doing, it described the difference between Mississippi’s system and Georgia’s system as follows:
*238 “In a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an. invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty. Assuming a determination by the state appellate court that the invalid factor would not have made a difference to the jury’s determination, there is no constitutional violation resulting from the introduction of the invalid factor in an earlier stage of the proceedings. But when the sentencing body is told, to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death’s side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualizéd sentence.” 503 U. S., at 232 (emphasis added).
The first sentence in this statement is the first and only suggestion in our cases that the submission of a vague aggravating circumstance to a jury can never result in constitutional error in a nonweighing State. Indeed, the term “non-weighing State,” and the significance attached to it, does not appear in the Court’s jurisprudence prior to Stringer. The second sentence in the statement is less categorical than the first. It suggests that a state appellate court would have to make some form of a harmless-error inquiry to satisfy itself that the invalidated factor “would not have made a difference to the jury's determination” before it could conclude that there was “no constitutional violation.” Ibid. Given this errant language in Stringer, I agree that it is “[n]ot surprising]” that the lower courts have since operated under the assumption “that different rules apply to weighing and non-weighing States,” and that harmless-error review is necessary only in the former. Ante, at 218, n. 3. My point is simply that such an assumption is unfounded based on our *239 prior cases. And regardless of the lower courts’ interpretation of our precedents, I think it more important that our own decisions have not repeated Stringer’s characterization of those precedents. See, e. g., Tuggle v. Netherland, 516 U. S. 10, 11 (1995) (per curiam) (characterizing Zant as holding “that a death sentence supported by multiple aggravating circumstances need not always be set aside if one aggra-vator is found to be invalid” (emphasis added)).
For the reasons stated in Parts II-A and II-B, supra, I would not take a single ambiguous sentence of dicta and derive from it a rule of law that is unjustified and that, in cases where the error is in fact harmful, would deprive a defendant of a fair and reliable sentencing proceeding.
III
The upshot is that I would require a reviewing court to examine whether the jury’s consideration of an unconstitutional aggravating factor was harmful, regardless of whether the State is a weighing State or a nonweighing State. I would hold that the fact that a State is a nonweighing State may make the possibility of harmful error less likely, but it does not excuse a reviewing court from ensuring that the error was in fact harmless. Our cases in this area do not require a different result.
IV
The Court reaches a somewhat similar conclusion. It, too, would abolish (or at least diminish the importance of) the weighing/nonweighing distinction for purposes of harmless-error analysis. But then, surprisingly, it also diminishes the need to conduct any harmless-error review at all. If all the evidence was properly admitted and if the jury can use that evidence when it considers other aggravating factors, any error, the Court announces, must be harmless. See ante, at 220 (holding that when “one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances” that underlie the invalidated *240 aggravating factor, a.reviewing court need not apply harmless-error review).
Common sense suggests, however, and this Court has explicitly held, that the problem before us is not a problem of the admissibility of certain evidence. It is a problem of the emphasis given to that evidence by the State or the trial court. If that improper emphasis is strong enough, it can wrongly place a “thumb on death’s side of the scale” at Stage Two (sentencing). That is what the Court said in Stringer, that is what the Court necessarily implied in Zant, and that is what the Court held in Clemons. I bélieve the Court is right to depart from the implication of an errant sentence in Stringer. But it is wrong to depart without explanation from Clemons’ unanimous holding — a holding that at least two Members of this Court have explicitly recognized as such. See Pensinger v. California, 502 U. S. 930, 931 (1991) (O’Connor, J., joined by Kennedy, J., dissenting from denial of certiorari) (noting that the “‘especially heinous’ instruction did not change the mix of evidence presented to the jury in [Clemons]” and “that fact alone did not support a finding of harmlessness”).
The Court cannot reconcile its holding with Clemons. That opinion makes clear that the issue is one of emphasis, not of evidence. Indeed, the Court explicitly disavowed the suggestion that Mississippi’s “reliance on the ‘especially heinous’ factor led to the introduction of any evidence that was not otherwise admissible in either the guilt or sentencing phases of the proceeding. All of the circumstances surrounding the murder already had been aired during the guilt phase of the trial and a jury clearly is entitled to consider such evidence in imposing [the] sentence.” 494 U. S., at 754-755, n. 5. And the entire Court agreed that the potentially improper emphasis consisted of the fact that “the State repeatedly emphasized and argued the ‘especially heinous’ factor during the sentencing hearing,” while placing “little em *241 phasis” on the sole valid aggravator of robbery for pecuniary gain. Id., at 753-754; see also id., at 773, n. 23 (Blackmun, J., joined by Brennan, Marshall, and Stevens, JJ., concurring in part and dissenting in part).
The Court’s only answer is to assert that “Clemons maintains the distinction envisioned in Zant.” Ante, at 218, n. 3 (citing Clemons, supra, at 745). But Clemons did no such thing. Although the Court did observe the differences between the statutory schemes of Georgia and Mississippi, it certainly did not, as the Court claims, suggest that harmless-error analysis should never be conducted in the former and always be conducted in the latter. Rather, the Court made the unremarkable statement that “[i]n a State like Georgia, where aggravating circumstances serve only to make a defendant eligible for the death penalty and not to determine the punishment, the invalidation of one aggravating circumstance does not necessarily require an appellate court to vacate a death sentence and remand to a jury.” Clemons, supra, at 744-745 (emphasis added). Of course, the implication of the qualifier “necessarily” is that, in some cases, a jury’s consideration of an invalidated aggravating circumstance might require that a death sentence be vacated, even “[i]n a State like Georgia.”
In sum, an inquiry based solely on the admissibility of the underlying evidence is inconsistent with our previous cases. And as explained above, see supra, at 231-234, the potential for a tilting of the scales toward death is present even in those States (like Georgia and Virginia) that permit a jury to consider all of the circumstances of the crime.
V
It may well be that the errors at issue in this , case were harmless. The State of California did not ask us to consider the Ninth Circuit’s contrary view, and I have not done so. Given the fact that I (like the Court in this respect) would *242 abolish the weighing/nonweighing distinction, and in light of the explanation of the kind of error at issue, I would remand this case and require the Ninth Circuit to reconsider its entire decision in light of the considerations I have described.