PATRICK E. HIGGINBOTHAM, Circuit Judge,
joined by KING, Chief Judge, and W. EUGENE DAVIS, and WIENER, Circuit Judges, concurring:
I concur fully in the excellent opinion of the Court, but write separately to explain my preferred path. As for the merits of Burdine’s claim, he had no lawyer for not insignificant amounts of time as the government presented its case. This is surely a denial of the constitutional right to counsel. The more difficult issue is the threshold Teague question of whether this court has the power to grant the relief Burdine requests on habeas review.
I
Teague v. Lane[1] announced that a federal court reviewing a habeas petition cannot apply a “new rule” of law in granting relief to the prisoner.[2] In other words, a federal habeas petitioner cannot rely on a rule of federal constitutional law that did not exist at the time his conviction became final. The rule of Teague is no legal technicality. Rather, it is a recognition of the important, but sensitive, role of habeas corpus in our federal system. Teague is an integral component of the structure by which constitutional questions arising out of state criminal convictions are reviewed by federal courts.
Originating in the Habeas Corpus Act of 1867, in tandem with the Reconstruction Amendments, the modern writ of habeas corpus has operated as a vital safeguard of the federal constitutional rights of persons convicted in state courts.[3] It has a history bound up in the expansion of federal supervision over the States and the genesis of modern civil rights, and in particular the movement toward racial equality. Habeas corpus originally served only to ensure the release of persons imprisoned without legal process, but its reach expanded slowly until the landmark decision of Brown v. *351 Allen.[4] Only then in 1958 did federal ha-beas afford relief from a state conviction based on constitutional error.
In practical effect, Brown replaced direct review in the Supreme Court of state convictions by enlisting the lower federal courts in the task of reviewing claims of constitutional deprivation ensuing from state criminal convictions. In the same stroke, Brown expanded the availability to state prisoners of a remedy for constitutional violations suffered during their prosecution. This expansion of the writ, however, threatened the finality of criminal convictions. Unlike appellate review, ha-beas review was not bound by time limits,[5] and changes in the law could render convictions that were valid when decided invalid under current law. In such cases, no longer would the Reconstruction-era concern with States flouting federal law be relevant — instead, state-court convictions that complied with federal law could be challenged years later based on developments in federal law that the state courts could not have anticipated.
Following Brown, the Supreme Court struggled with the problem of habeas courts applying recent federal decisions to old convictions. It first attempted to give only prospective effect to its newly found constitutional rights,[6] an effort that drew sharp criticism.[7] Urged on by Justice Harlan, the Court finally abandoned the effort at prospective effect[8] and turned to the scope of the habeas remedy in Teag-ue.[9] By forbidding a federal court from applying legal rules that did not exist at the time the prisoner’s conviction became final, Teague allows federal courts to provide review of state-court convictions, in a fashion akin to appellate review, without interfering with convictions in state courts that acted in compliance with federal law. So it is that Teague is a rich and powerful discipline for the wielding of federal power. More to the point, it is not an equitable doctrine relaxing or drawing taut for cases perceived as deserving of adjustment — in either direction. At the least the doctrine has matured to this relative fixity.
II
The Teague principle, though easy to state, can pose difficult questions in its application. The majority opinion relies primarily on Penry v. Lynaugh,[10] properly so. But the trail of cases since Penry has left it near the outer limits of the Court’s *352 willingness to conclude that a proposed rule is not a new rule.[11] For me, the import of Penry is better understood in light of Sawyer v. Butler,[12] a case more representative of the Teague jurisprudence since Penry. In Sawyer, this court en banc addressed the claim of a habeas petitioner that the prosecutor at his trial violated the rule announced in Caldwell v. Mississippi[13] which had been decided by the Supreme Court after Sawyer’s conviction had become final. Caldwell had held that a prosecutor’s statements to the sentencing jury in a capital case that diminish the jury’s sense of responsibility in its sentencing role require reversal of the sentence of death.[14] We ruled that Caldwell announced a new rule, one that did not exist at the time Sawyer’s conviction became final.[15] Thus, our court was barred from applying Caldwell to Sawyer’s case.
In concluding that Caldwell announced a new rule, we pointed to two salient facts: First, Caldwell was the first case to conclude that the Eighth Amendment provided the basis for overturning a death sentence because of prosecutorial statements.[16] Second, Caldwell eliminated the requirement present in older due process cases that the defendant must show that the prosecutor’s statements rendered the trial fundamentally unfair.[17] Instead, Caldwell created a presumption of fundamental unfairness that did not exist before. Thus, Caldwell lowered the threshold for finding reversible error;[18] Sawyer stands for the crucial principle that a rule is a new rule when its articulation changes the elements or the burdens of proof a prisoner must satisfy to prove a constitutional violation.
Sawyer also explained Penry. We observed that, at base, Penry was not about whether a new rule or an old rule applied; instead, “Penry involved the consistent application of an established constitutional rule to, in essence, changes in the facts.”[19] This distinction between cases presenting new rules and cases presenting new facts is central to the functioning of Teague. State courts cannot and need not divine the future of federal constitutional law; they need only follow the rules extant at the time of the defendant’s conviction and appeal. Thus, Teague prohibits federal courts from judging state-court convictions against standards developed after those convictions became final. On the other hand, every court — state or federal — has the duty to faithfully apply legal rules to the distinct facts of each case. Teague does not bar a federal court from reviewing the application of an old rule to new facts in state court; as we explained in Saioyer, Penry said as much.[20]
*353 Since Saivyer, the Supreme Court has further articulated the approach to law and fact in the Teague analysis:
Teague and our subsequent decisions interpreting it require a federal court to answer an initial question, and in some cases a second. First, it must be determined whether the decision relied upon announced a new rule. If the answer is yes and neither exception applies, the decision is not available to the petitioner. If, however, the decision did not announce a new rule, it is necessary to inquire whether granting the relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent.[21]
I believe this is the appropriate framework for analyzing Burdine’s claim.
Ill
Our decision today relies on no new rule. Although the principal dissent takes issue with this conclusion, the only rule being applied is forty years old. The so-called Cronic rule dates back to the 1961 decision Hamilton v. Alabama.[22] In Hamilton, the Supreme Court held that absence of counsel at an arraignment in Alabama was per se reversible. The Court concluded that “[arraignment under Alabama law is a critical stage in a criminal proceeding.”[23] Because arraignment was a critical stage of the proceeding and the prisoner was denied counsel at arraignment, the Court “[did] not stop to determine whether prejudice resulted,” but reversed his conviction.[24] Thus the Cronic rule — that (1) denial of counsel at (2) a critical stage of proceedings mandates reversal[25] — was established twenty-six years before Bur-dine’s conviction became final. Most important, the Court in Hamilton made clear that determination of what was a “critical stage” rested upon the facts of each case. It acknowledged that arraignments in other jurisdictions may not be critical to the defense.[26] What mattered to the Court was that the facts of the case justified the conclusion that counsel was denied at a critical stage.
Since Hamilton, the Supreme Court has applied the same rule to different facts. *354 In each case, the Court did not reformulate the rule, but applied the pre-existing rule to a different set of facts. In White v. Maryland,[27] the Court deemed a preliminary hearing to be a critical stage. The Court looked to the facts of the case to determine whether “rights are preserved or lost” and concluded that even if normally a preliminary hearing is not a critical stage in Maryland, in this case a guilty plea was entered.[28] Although the defendant later reversed his plea, the initial plea of guilty was entered into evidence at trial.[29] In other cases, the Supreme Court has found denial of counsel to require reversal even when the denial affected only a single trial decision,[30] a portion of the testimony,[31] or closing arguments before a judge.[32]
Likewise, the element of “absence of counsel” has not been sliced to a succession of fine legal rules, but an assessment of the facts and realities of the individual case. The Supreme Court has held that the physical presence of counsel does not prevent his “absence” for purposes of the Cronic rule.[33] To the contrary “absence” means simply that the defendant was without counsel.
What is clear from this line of Supreme Court cases is that the applicable rule in this case is not new. Absence of counsel at a critical stage of trial renders the trial unfair and requires reversal. What is also clear is that what constitutes a “critical stage of the proceeding” and even “absence of counsel” depends on an assessment of the facts of each case. Thus, the Teague issue in this case reduces to whether, in applying an old rule to the facts of this case, the facts are so “novel” that we in effect do not apply the rule, but create a new rule with broader scope or greater bite.[34]
The facts of this case do not test the boundaries of the Cronic rule. That sleeping counsel is absent counsel is elementary. Burdine’s slumbering counsel presents us with a new factual situation, hopefully rare, but not a difficult question of the application of law to fact.[35] The novelty of this case stems not from the implausibility of applying the rule to these facts, but from the stunning image of an *355 attorney sleeping in the courtroom while his client is on trial for his life. We are not asked to stretch to conclude that counsel was absent in every relevant sense.
So, too, there is nothing new about concluding that the facts of this case demonstrate that the taking of evidence against Burdine is a critical phase of the trial. No more recently than 1963 did the Supreme Court describe a critical stage of the proceedings as a point at which “rights are preserved or lost.”[36] Failure to object to the admission of evidence waives any subsequent assertion of error. A lawyer’s absence during substantial portions of testimony cripples his ability to cross-examine the witnesses and impairs his ability to present the defense case and jury arguments.[37]
Surely the presentation of the evidence of guilt is a critical phase. Nor is it an answer that Burdine “freely and voluntarily confessed to his crime” (and hence that his lawyer slept didn’t matter).[38] This ignores both the record in this case and the reality that the effort to persuade a jury not to vote for death often runs, as here, throughout the guilt phase of the trial. The phrasing of the questions, their sequence and rhythm set tone and paint a picture. They become the platform for presenting the penalty case and final argument. The search for the precise evidence that came in as Burdine’s counsel slept rests upon a view of trial dynamics and reality that confounds my forty years in the courtroom. With respect to my colleagues, that is not the way it works, and for the same reasons it is not the law. We presume prejudice because experience tells us that an occurrence presents both a high probability of prejudice and a difficulty of “proving it” in any finite sense. The law speaks of presumption not to supply a missing ingredient, but rather to recognize its inevitable presence.[39] Right to counsel at critical stages is only an example of this principle. We simply will not put a person on trial for his life in the absence of counsel.
Indeed, a lawyer asleep in the courtroom is more harmful than one who is physically absent. A message is sent to the jury when a defense counsel sleeps, sometimes as long as ten minutes, the prosecutor continues to present evidence, the judge does nothing (says he didn’t see it) — all the officers of the court pay it no mind. This is just a “slow plea”: going through the motions is the message. That *356 is what happened. It will not do to dance away from the facts. They were found by the state court and come to this court unchallenged by the State.
IV
The principal dissent relies heavily on a notion introduced by Butler v. McKellar[40] that a habeas court cannot apply a rule if at the time the prisoner’s conviction became final the application of the rule was “debatable among reasonable jurists.”[41] The dissent then cites the divided panel opinion in this case and the Texas courts’ divergent opinions in Burdine’s state habe-as case as evidence that the application of the Cronic rule was “debatable among reasonable jurists.”[42] It is true that Butler implies that one can count heads to determine whether a rule is new or not.[43] It is also true that the Supreme Court has since abandoned this approach in judging reasonableness.
In Stringer v. Black,[44] the Supreme Court rejected the argument that the prisoner’s requested rule was new because the Fifth Circuit had held to the contrary before the Supreme Court announced the rule. The Supreme Court stated, “The purpose of the new rule doctrine is to validate reasonable interpretations of existing precedents. Reasonableness, in this as in many other contexts, is an objective standard, and the ultimate decision whether [the rule] was dictated by precedent is based on an objective reading of the relevant cases.”[45] The Supreme Court tersely concluded that the decisions of two unanimous panels of the Fifth Circuit had been unreasonable.[46]
Cases since Butler have rejected contentions by States that federal habeas courts should further defer to state rulings of law. The suggestion in Wright v. West[47] that federal courts defer to the state courts’ application of law was made by a minority of the Court and expressly rejected by a majority of the Justices to consider the proposal.[48] Two terms ago, a majority of the Supreme Court reiterated its conviction that a federal court must make an independent judgment in applying an old rule to a set of facts[49]
*357 We must make an independent determination of the application of Cronic to the facts of this case. I am convinced that precedent dictated the conclusion that Burdine’s counsel was absent during a critical stage of the trial and that a contrary-conclusion would be unreasonable, viewed objectively.

. 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

. See id. at 310, 109 S.Ct. 1060.

. See Fay v. Noia, 372 U.S. 391, 415, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

. 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

. This changed, of course, with the enactment of the AEDPA in 1996. See 28 U.S.C. § 2244(d)(1).

. See Linkletter v. Walker, 381 U.S. 618, 628, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) ("[I]n appropriate cases the Court may in the interest of justice make [a] rule prospective.”); see also Johnson v. New Jersey, 384 U.S. 719, 732, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966) (applying Miranda decision only to trials commenced after Miranda); Stovall v. Denno, 388 U.S. 293, 300, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (”[N]o distinction is justified between convictions now final ... and convictions at various stages of trial and direct review.”).

. Paul J. Mishkin, Foreward: The High Court, The Great Writ, and the Due Process of Time and Law, 79 Harv. L.Rev. 56 (1965).

. See Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (holding that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final”).

. See Teague, 489 U.S. at 304-05, 109 S.Ct. 1060.

. 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

. See also id. at 351-53, 109 S.Ct. 2934 (Scalia, J., dissenting).

. 881 F.2d 1273 (5th Cir.1989) (en banc), aff'd sub nom. Sawyer v. Smith, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

. 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

. Id. at 328-29, 105 S.Ct. 2633.

. See Sawyer, 881 F.2d at 1291.

. See Sawyer, 881 F.2d at 1290; see also Caldwell, 472 U.S. at 328-29, 340, 105 S.Ct. 2633.

. See Sawyer, 881 F.2d at 1284, 1291; see also Caldwell, 472 U.S. at 340, 105 S.Ct. 2633.

. See Sawyer, 881 F.2d at 1291 ("We have little difficulty in concluding that ... Caldwell’s greatly heightened intolerance of misleading jury argument is a new rule within the meaning of Teague.”).

. Id. at 1288.

. By analogy, federal courts routinely entertain the application of established law to different facts in reviewing the constitutionality of searches and seizures of evidence admitted *353 in federal criminal proceedings. If Teague were an issue, no one would seriously contend that such cases involve new rules, even though law enforcement officers may be entitled to qualified immunity from civil liability because reasonable jurists could disagree about the constitutionality of a particular application of a Fourth Amendment rule. See Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Court has drawn upon Anderson v. Creighton for its treatment of the level of generality, not its reasonableness in application of a settled rule. See Sawyer v. Smith, 497 U.S. 227, 236, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).

. Stringer v. Black, 503 U.S. 222, 227-28, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

. 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).

. Id. at 53, 82 S.Ct. 157.

. Id. at 55, 82 S.Ct. 157.

. See United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); see also Holloway v. Arkansas, 435 U.S. 475, 489, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (''[Wjhen a defendant is deprived of the presence and assistance of his attorney, either throughout the prosecution or during a critical stage in, at least, the prosecution of a capital offense, reversal is automatic.”).

. The Court noted that in Alabama, a plea of insanity must be made at the arraignment or forever lost. Hamilton, 368 U.S. at 53, 82 S.Ct. 157. It acknowledged, however, that the rules vary by jurisdiction, and what is important is not the category of proceeding in which counsel is denied, but that the facts of the individual case warrant the conclusion that the stage is ''critical.” Id. at 54, 82 S.Ct. 157.

. 373 U.S. 59, 83 S.Ct 1050, 10 L.Ed.2d 193 (1963).

. Id. at 60, 83 S.Ct. 1050.

. Id.

. See Brooks v. Tennessee, 406 U.S. 605, 612-13, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (rule requiring defendant to testify first denied him "the guiding hand of counsel" with respect to a "critical element of his defense”).

. See Ferguson v. Georgia, 365 U.S. 570, 596, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (inability of counsel to question defendant in court violated right to counsel).

. See Herring v. New York, 422 U.S. 853, 858, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (closing argument is "a basic element” of the criminal trial and denial of such requires reversal).

. See Holloway v. Arkansas, 435 U.S. 475, 489-90, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

. "If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule.... Where the beginning point is a rule of this general application, a rule designed for the specific purpose of evaluating a myriad of factual contexts, it will be the infrequent case that yields a result so novel that it forges a new rule, one not dictated by precedent.” Wright v. West, 505 U.S. 277, 308-09, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (Kennedy, J., concurring in the judgment).

. See Javor v. United States, 724 F.2d 831, 833 (9th Cir.1984).

. White v. Maryland, 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963).

. The Supreme Court has held that the presentation of the defendant's testimony and the making of closing arguments are critical stages of the trial. See Herring v. New York, 422 U.S. 853, 858, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (closing argument); Brooks v. Tennessee, 406 U.S. 605, 612-13, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (timing of defendant's testimony); Ferguson v. Georgia, 365 U.S. 570, 596, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (questioning of defendant). Thus, not only can the presentation of evidence be a critical phase of trial, but counsel’s absence during the presentation of evidence prejudices the defense in subsequent critical phases of the trial. Cf. White v. Maryland, 373 U.S. at 60, 83 S.Ct. 1050 (preliminary hearing was critical stage of the proceedings when guilty plea was made during hearing that was later entered into evidence against defendant).

. See Judge Jolly’s dissent, infra at 356.

. See United States v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) ("There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.”); Tippins v. Walker, 77 F.3d 682, 687 (2d Cir.1996) ("Under these circumstances, where the adversary nature of the proceeding was subject to repeated suspensions, there is little difference between saying that prejudice will be presumed and saying that prejudice has been demonstrated.”).

. 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990).

. See infra, at 377.

. See infra, at 377.

. See Butler, 494 U.S. at 415, 110 S.Ct. 1212 ("That the [rule at issue] was susceptible to debate among reasonable minds is evidenced further by the differing positions taken by the judges of the Courts of Appeals for the Fourth and Seventh Circuits.").

. 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992).

. Id. at 237, 112 S.Ct. 1130.

. Id. ("The short answer to the State's argument is that the Fifth Circuit made a serious mistake in [its decisions].”).

. 505 U.S. 277, 285-95, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (opinion of Thomas, J.).

. “Teague did not establish a 'deferential' standard of review of state court determinations of federal law. It did not establish a standard of review at all.... In Teague, we refused to give state prisoners the retroactive benefit of new rules of law, but we did not create any deferential standard of review with regard to old rules.” Id. at 303-04, 109 S.Ct. 1060 (O’Connor, J., concurring in the judgment). See also id. at 307, 109 S.Ct. 1060 (Kennedy, J., concurring in the judgment) (“Teague did not establish a deferential standard of review of state-court decisions of federal law.”).

. See Williams v. Taylor, 529 U.S. 362, 382, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of Stevens, J.) ("[W]hether or not a rule clearly established at the time a state court renders its final judgment of conviction is a question as to which the 'federal courts must make an independent evaluation.' ”); Williams, 529 U.S. at 402, 120 S.Ct. 1495 *357 (opinion of O’Connor, J.) ("If today's case were governed by the federal habeas statute prior to Congress' enactment of AEDPA in 1996, I would agree with Justice STEVENS that Williams' petition for habeas relief must be granted if we, in our independent judgment, were to conclude that his Sixth Amendment right to effective assistance of counsel was violated.”). I note that the AEDPA modified this rule. See id. at 409-13, 120 S.Ct. 1495 (opinion of the Court). The AEDPA does not apply to this case. The effective date of the AEDPA was April 24, 1996. Burdine filed his federal habeas petition in April 1995.