**[J-31-2025] [MO: Wecht, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 813 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on |
| | : | December 29, 2023, in the Court of |
| | : | Common Pleas of Bucks County, |
| v. | : | Criminal Division, at No. CP-09-CR- |
| | : | 0001413-2014. |
| | : | |
| MARCEL EMANUEL JOHNSON, | : | SUBMITTED:  February 26, 2025 |
| | : | |
| Appellant | : | |

**CONCURRING AND DISSENTING OPINION**

**JUSTICE McCAFFERY**                                         **DECIDED: March 26, 2026**

I concur with the Majority's conclusion that Appellant, Marcel Emanuel Johnson, is not entitled to collateral relief on his guilt-phase claims.  However, I believe trial counsel's unreasonable failure to investigate and impeach a jailhouse informant, whose testimony provided the only direct evidence supporting the witness-killing aggravator in 42 Pa.C.S. § 9711(d)(5),[1] caused Johnson prejudice.  I therefore join the Dissent's analysis and conclusion that Johnson's death sentence should be vacated and that his case should be remanded for a new penalty phase.  I write separately to further explain why Johnson was prejudiced.

---

[1] "The victim was a prosecution witness to a murder or other felony committed by the defendant and was killed for the purpose of preventing [her] testimony against the defendant in any grand jury or criminal proceeding involving such offenses."  42 Pa.C.S. § 9711(d)(5).

## I. Ineffective Assistance of Counsel: Prejudice and Capital Sentencing

To prevail on an ineffectiveness claim, a petitioner must demonstrate that his claim has arguable merit, that defense counsel had no reasonable strategic basis for the challenged action or inaction, and that counsel's deficient performance resulted in prejudice. *See Commonwealth v. Daniels*, 104 A.3d 267, 281 (Pa. 2014). Failure to meet any one prong — arguable merit, deficient performance, or prejudice — is fatal to the claim. *See Commonwealth v. Fears*, 86 A.3d 795, 804 (Pa. 2014). With respect to Johnson's claim challenging his trial counsel's failure to investigate and impeach the jailhouse informant (George Lewis), the Court's focus should be on the prejudice prong.[2]

Prejudice exists if there is a "reasonable probability that the outcome of the proceeding would have been different but for counsel's constitutionally deficient performance." *Daniels*, 104 A.3d at 281 (citations omitted). A reasonable probability is less than "more likely than not[.]" *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (*citing Strickland v. Washington*, 466 U.S. 668, 693, 697 (1984)). It is "a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Daniels*, 104 A.3d at 281 (*citing Commonwealth v. Spotz*, 84 A.3d 294, 312 (Pa. 2014)).

When assessing prejudice in the penalty phase of a capital trial, "the question is whether there is a reasonable probability that, absent the errors, the sentencer —

---

[2] I agree with the Dissent that Johnson's claim has arguable merit and that his trial counsel's performance was constitutionally deficient. *See* Dissent at 9–10. The Majority ostensibly agrees this particular claim hinges on prejudice. *See* Majority Opinion at 51–52 ("[C]ounsel's avowed failure to investigate must have been informed by a reasonable strategy, and it is not at all clear that such a strategy is present here.") (footnote omitted); *id.* at 54–55 (affirming dismissal of guilt-phase claim challenging counsel's ineffectiveness in failing to impeach Lewis on prejudice grounds because "we cannot conclude that under such impeachment it is reasonably probable not only that the jury would have rejected the substance of Lewis' testimony but that, in so doing, it would have found the prosecution in its entirety so flawed as to reach a different verdict."); *id.* at 77–78 & n.200 (reweighing the aggravators and mitigators and declining to find prejudice).

including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. *See also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) ("In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.").

The court "must consider the totality of the evidence before the judge or jury[,]" while "[t]aking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings[.]" *Strickland*, 466 U.S. at 695–696. Prejudice may exist even if another aggravator remains. *See Porter v. McCollum*, 558 U.S. 30, 40–44 (2009) (*per curiam*);[3] *Wiggins*, 539 U.S. at 534–538; *Williams v. Taylor*, 529 U.S. 362, 396–399 (2000). Prejudice must always be assessed "in the context of the entire case," regardless of whether the reviewing court ultimately affirms the death sentence. *Commonwealth v. Bomar*, 104 A.3d 1179, 1204 (Pa. 2014) (citation omitted). *See also Thornell v. Jones*, 602 U.S. 154, 165–172 (2024) (holding, after extensively examining the aggravators and mitigators, that the defendant failed to show prejudice under *Strickland*).[4]

---

[3] A *per curiam* opinion's precedential value depends on the degree of its reasoning. Generally, a summary affirmance or reversal lacks precedential value, but a reasoned opinion is given the same weight as a signed opinion. *See* Bryan A. Garner et al., The Law of Judicial Precedent 214–217 (2016). The Court often issues such opinions in the federal habeas context. *See, e.g., Klein v. Martin*, 146 S. Ct. 589, 593 ( 2026) (citing examples).

[4] I note that "the resolution of capital-sentencing ineffectiveness claims is frequently fact-intensive, so that, other than in terms of the pronouncement of overarching standards, the precedential effect of individual decisions may be limited." *Commonwealth v. Gibson*, 19 A.3d 512, 526 (Pa. 2011) (citation and internal quotation marks omitted); *cf. Shinn v. Kayer*, 592 U.S. 111, 123 (2020) ("[B]ecause the facts in each capital sentencing case are unique, the weighing of aggravating and mitigating evidence in a prior published decision is unlikely to provide clear guidance about how a state court would weigh the evidence in a later case.").

Because capital sentencing requires a **moral judgment** of whether an eligible defendant deserves death, the prejudice analysis demands a close assessment of the remaining aggravators and the mitigating evidence. *See Wiggins*, 539 U.S. at 538 (explaining that, in capital sentencing cases, the prejudice inquiry asks whether counsel's deficient performance "influenced the jury's appraisal of [the defendant's] moral culpability") (citation and internal quotation marks omitted); *cf. Richmond v. Lewis*, 506 U.S. 40, 48 (1992) ("'[W]hen the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale,' nor can a court 'cure' the error without deciding, itself, that the valid aggravating factors are weightier than the mitigating factors.") (*citing Stringer v. Black*, 503 U.S. 222, 232 (1992), *holding modified by Brown v. Sanders*, 546 U.S. 212 (2006)).[5] *Strickland* and its progeny demand a "probing and fact-specific analysis." *Sears v. Upton*, 561 U.S. 945, 955 (2010) (*per curiam*) (citation omitted).

The prejudice analysis requires that the court evaluate the qualitative weight of the remaining aggravators and balance it against overall strength and character of the mitigating evidence:

> [F]or purposes of assessing *Strickland* prejudice, the question is whether the defendant has shown a reasonable probability that … the outcome of

---

[5] *Sanders* eliminated the distinction drawn in *Stringer* between "weighing States" and "non-weighing States" for purposes of assessing "the skewing that could result from the jury's considering as aggravation properly admitted evidence that should not have weighed in favor of the death penalty." *See Sanders*, 546 U.S. at 221 (emphasis and citation omitted). In a "weighing" State, "after a jury has found a defendant guilty of capital murder and found the existence of at least one statutory aggravating factor, it must weigh the aggravating factor or factors against the mitigating evidence." *Stringer*, 503 U.S. at 229. By contrast, "[i]n a nonweighing State, so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty." *Id.* at 231. Pennsylvania is a weighing State. *See* 42 Pa.C.S. § 9711(c)(1).

the proceedings would have been different because at least one juror would have found that the mitigating circumstances collectively outweighed (or were as weighty as) the aggravating circumstances, or … that the overall quality of the case in mitigation warranted a sentence of life in prison.

*Daniels*, 104 A.3d at 303–304 (citation omitted).  In evaluating the remaining aggravators, the court must assess the role that the subtracted aggravator played in the government's theory of prosecution, including whether that aggravator overlapped factually with one of the other remaining aggravators, and whether it added special moral force or merely cumulative weight.  *Cf. Sanders*, 546 U.S. at 221 (holding that, if at least one juror determines that the prosecution did not prove an enumerated aggravator beyond a reasonable doubt, the jury cannot weigh the evidence proffered to support that aggravator "**unless** one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances") (emphasis in original); *Stringer*, 503 U.S. at 230 ("In order for a state appellate court to affirm a death sentence after the sentencer was instructed to consider an invalid factor, the court must determine what the sentencer would have done absent the factor.").[6]  On the mitigation side of the scale, the court must consider not only the number of mitigators found but also the depth and moral force of all the mitigating evidence.  *See Porter*, 558 U.S. at 40–44; *Rompilla v. Beard*, 545 U.S. 374,

---

[6] I have found no binding precedent, by either our Court or the United States Supreme Court, addressing how to reweigh the mitigators and aggravators where there is a reasonable probability that, but for counsel's error, at least one juror would have found them in equipoise based on the prosecution's failure to prove one of them beyond a reasonable doubt.  In my view, the closest comparators are cases, like *Sanders* and *Stringer*, addressing how to reweigh aggravators and mitigators upon subtracting an aggravator later deemed invalid.  With the caveat that harmless-error review under the Eighth Amendment and the *Strickland* prejudice standard under the Sixth Amendment are not coextensive, I would follow the general legal principles articulated in *Sanders* and its predecessors.  *Cf. Andrew v. White*, 604 U.S. 86, 95 (2025) (*per curiam*) (reaffirming that "certain principles are fundamental enough that when new factual permutations arise, the necessity to apply the earlier rule will be beyond doubt") (citations omitted); *id.* at 94–95 (recognizing the overlap between general legal principle underlying state prisoner's Fourteenth Amendment due process claim and "the Eighth Amendment principle that a sentence may not be grossly disproportionate to the offense") (citation omitted).

378, 390–393 (2005); *Wiggins*, 539 U.S. at 534–538; *Williams*, 529 U.S. at 395–396. Even "where the aggravating factors greatly outweigh the mitigating evidence [such that] there may be no 'reasonable probability' of a different result[,]" the reviewing court must still show its work. *Jones*, 602 U.S. at 165. Most importantly, prejudice must be assessed through the lens of Pennsylvania's death penalty statute. *See Daniels*, 104 A.3d at 303. Under Pennsylvania law,

> [t]he capital sentencing process implicates two discrete determinations; the first is eligibility, in which the statutory scheme narrows the class of persons who may be subject to the death penalty; the second is selection, at which point the sentencer decides whether a person who is eligible for the death penalty should receive such punishment. Aggravating circumstances provide the means of narrowing the class for purposes of eligibility and, under the Pennsylvania statute, along with mitigating circumstances and victim impact evidence, serve as the bases for the selection decision.

*Commonwealth v. Hughes*, 865 A.2d 761, 798 n.41 (Pa. 2004) (citations omitted).

Death is permitted only if the jury unanimously finds that (1) the Commonwealth proved, for eligibility purposes, at least one statutorily enumerated aggravating circumstance beyond a reasonable doubt; and (2) for selection purposes, either (a) there are "no mitigating circumstances," or (b) "one or more aggravating circumstances … outweigh any mitigating circumstances." 42 Pa.C.S. § 9711(c)(1)(iv). Death is prohibited if one or more jurors determine the aggravators and mitigators are in equipoise. *See id.* Crucially, the death penalty statute "does not provide for consideration of factors outside those denominated as aggravating or mitigating circumstances or victim impact evidence." *Hughes*, 865 A.2d at 799 n.44. *See also* 42 Pa.C.S. § 9711(d) ("Aggravating circumstances shall be limited to the [enumerated statutory factors.]").

For the selection determination, "a mere mathematical finding of more aggravating or mitigating circumstances is not dispositive; a jury may weigh one factor more heavily

than multiple other factors." *Commonwealth v. Speight*, 854 A.2d 450, 461 n.10 (Pa. 2004) (*citing* 42 Pa.C.S. § 9711(c)). The death penalty statute does not "provide an express standard to be applied in weighing mitigating factors against aggravating factors[.]" *Commonwealth v. Beasley*, 475 A.2d 730, 737 (Pa. 1984). The determination involves an inherently moral question of whether the defendant deserves the death penalty. *See Saffle v. Parks*, 494 U.S. 484, 495 (1990) (noting the weighing of aggravators and mitigators boils down to "whether the defendant, in the eyes of the community, is morally deserving of the death sentence"); *cf. Abdul-Kabir v. Quarterman*, 550 U.S. 233, 263 (2007) (reaffirming "that before a jury can undertake the grave task of imposing a death sentence, it must be allowed to consider a defendant's moral culpability").

So, when assessing prejudice on collateral review, "the weighing process involves an assessment of the relative strength and weakness of the aggravating and mitigating evidence, which is necessarily a qualitative and not a quantitative approach, especially when the catchall mitigator is at issue." *Daniels*, 104 A.3d at 304 (citations omitted). The reviewing court "must also keep in mind how tailored death penalty proceedings are toward life sentences, … not only in the channeling of aggravators and the differing burdens of proof governing aggravators and mitigators, but also in the fact that a single juror can effectively negate the prospect of a death sentence." *Id.* at 303 (citations omitted). If one juror would have found that the Commonwealth failed to prove a statutory aggravator beyond a reasonable doubt, the evidence proffered in support of that aggravator may not be included in the jury's moral calculus during the selection process unless another aggravator found by the jury allowed it "to give aggravating weight to the same facts and circumstances." *Sanders*, 546 U.S. at 220.

## II. Johnson Suffered Prejudice at Sentencing

In Johnson's case, the jury found three aggravators and three mitigators in relation to R.R.'s murder. The aggravating circumstances were that the victim was a prosecution witness to another murder (Ebony Talley's), that Johnson was convicted of another murder (Talley's) committed at the same time, and that the victim was a child under 12 years old. *See* 42 Pa.C.S. § 9711(d)(5), (11), (16). The mitigating circumstances included Johnson's lack of significant prior criminal history, his young age, and the catchall mitigator. *See* 42 Pa.C.S. § 9711(e)(1), (4), (8).

The catchall mitigator is especially important in the prejudice analysis. *See Daniels*, 104 A.3d at 256 (citations omitted). It covers "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." 42 Pa.C.S. § 9711(e)(8). "Evidence concerning the catchall mitigator tends to be subjective, and the value of that evidence no doubt varies depending upon the context." *Commonwealth v. Ballard*, 80 A.3d 380, 411 (Pa. 2013). As pertinent here, Johnson presented evidence that his "life up until the time of the murders was characterized by chronic and pervasive abuse, neglect and abandonment; that he suffered brain damage and had been diagnosed with various mental illnesses; cycles of placement in and out of treatment programs; and a complete lack of any semblance of stability or permanence." *Commonwealth v. Johnson*, 160 A.3d 127, 136 (Pa. 2017).

In my view, for the reasons set forth in the Dissent, "there is a reasonable possibility that one or more of the jurors would have found that Lewis's testimony was not credible and therefore, that the Commonwealth did not establish the aggravating circumstance [in Section 9711(d)(5)] beyond a reasonable doubt[.]" Dissent at 11. I also agree "there is a reasonable possibility that one or more of the jurors would have found that … the two remaining aggravating circumstances did not outweigh the three mitigating

circumstances." *Id.* Based on the unique circumstances of Johnson's case, I am not confident that, without the witness-killing aggravator in their moral calculus, all twelve jurors would have struck the same moral balance and unanimously sentenced him to death for R.R.'s murder.

As the Majority observes, "had the impeachment had the desired effect, it would have reduced the aggravators found unanimously from three to two, for want of direct evidence of the Section 9711(d)(5) witness-killing aggravator[.]" Majority Opinion at 77. While the numerical decrease in the aggravators is not dispositive, even the Majority recognizes that "there is some appeal to treating the fact that (in that scenario) the statutory mitigators would outnumber the statutory aggravators as dispositive in [Johnson's] favor." *Id.* Yet rather than conduct a probing, fact-intensive inquiry, the Majority hastily concludes there is no "reasonabl[e] probab[ility], in light of the two other aggravators found by the jury, that one or more members of the jury would have retreated from imposing a death sentence under these circumstances." *Id.* at 78. The Majority reasons only that "Section 9711(d)(5) was but one of three aggravators in a multiple-murder case, and one of the remaining aggravators was for the killing of a victim under twelve years old, the putative witness in question." *Id.* at 77–78. As such, I dissent from the Majority's analysis and conclusion.

I agree with the Majority that, when assessing prejudice on collateral review, the "task of reweighing" involves "a degree of difficult speculation." Majority Opinion at 78 n.200 (citation omitted). Our Court inevitably must decide "how a jury would review the evidence remaining in light of changes imposed on appeal[.]" *Id.* (citation omitted). *See also Strickland*, 466 U.S. at 695–696. However, little speculation is needed where, as here, the jury found multiple mitigating circumstances and its final moral judgment included an improper aggravator. *See Commonwealth v. Holcomb,* 498 A.2d 833, 849

n.16 (Pa. 1985) (plurality opinion) (recognizing, on direct appeal, that if the jury imposes the death penalty based on "several aggravating circumstances, one of which was improper under state law," then our Court "would be required to vacate the death sentence, at least where, as here, mitigating circumstances were present") (citations omitted); *cf. Commonwealth v. Karabin*, 559 A.2d 19, 24 (Pa. 1989) ("[T]he jury's finding of two aggravating circumstances, one of which is unsupported by the evidence, and unspecified mitigating circumstances requires that the death sentence imposed on the [defendant] be vacated.") (citations omitted); *Commonwealth v. Caldwell*, 532 A.2d 813, 817–818 (Pa. 1987) ("The jury's finding of four aggravating circumstances, two of which are unsupported by the evidence, and unspecified mitigating circumstances requires that the death sentences imposed on the [defendant] be vacated.") (citations omitted). In my view, "if there is an improper aggravating circumstance presented to the jury[,] it is impossible to tell from the record how the jury would have decided absent the improperly presented circumstance." *Holcomb*, 498 A.2d at 850.

Johnson's death sentence was not a foregone conclusion. "This is not a case where a jury expressly found that no mitigating circumstances were present, such that, upon declaring invalid one of multiple aggravating circumstances found by the jury, this Court could nevertheless affirm the death sentence on grounds that the death penalty is required so long as there remains at least one valid aggravating circumstance." *Commonwealth v. Aulisio*, 522 A.2d 1075, 1080 (Pa. 1987) (citation omitted). On the contrary, the jury clearly judged that Johnson's character weighed in favor of life. The jury sentenced him to life imprisonment for Talley's murder, despite finding the multiple-murders aggravator.[7] The jury's verdict with respect to her murder is significant because

---

[7] In relation to Talley's murder, the Commonwealth attempted to prove four statutory aggravators, including torture, *see* 42 Pa.C.S. § 9711(d)(8); conviction of another murder at the same time as her murder, *see* 42 Pa.C.S. § 9711(d)(11); Johnson's commission of (continued…)

the multiple-murder aggravator "is widely considered to be the 'most powerful imaginable aggravating evidence.'" *Bomar*, 104 A.3d at 1204 (*citing Commonwealth v. Simpson*, 66 A.3d 253, 278 (Pa. 2013)).  So, in their moral calculus, the jurors clearly gave **substantial** weight to Johnson's mitigation.  *See Johnson*, 160 A.3d at 151 n.27, 153 n.29 (discussing the jury's sentencing verdicts).  At the very least, the jury's imposition of different punishments for each murder establishes that one or more jurors concluded that the multiple-murders aggravator was in equipoise with Johnson's mitigation.  Otherwise, the jury would have sentenced Johnson to death twice instead of only once.  So, the witness-killing aggravator and the child-killing aggravator were the only ones that could have tipped the scale towards death.

It is impossible for us to know for certain which one tipped the scales.  However, the killing of a child eyewitness to a murder to prevent her from testifying against the murderer is, without question, morally reprehensible.  It also seems clear that, since the killing a child and the killing a witness are two independent aggravators, the killing of a child eyewitness is more morally bankrupt than the killing of an adult eyewitness.  But if we subtract the witness-killing aggravator, that leaves the child-killing aggravator as the only one with the potential to tip the balance in favor of death.  Although merely subtracting the witness-killing aggravator is not enough when assessing prejudice in a vacuum, it is significant in Johnson's case given the jury's decision to sentence him to life imprisonment for Talley's murder based on his mitigating circumstances.  It is a factor supporting a reasonable probability that, had the impeachment evidence been presented and used by competent defense counsel, at least one juror would have found **not only**

---

a felony drug offense in connection with her murder, *see* 42 Pa.C.S. § 9711(d)(13); and Johnson's knowledge of her pregnancy, *see* 42 Pa.C.S. § 9711(d)(17).

that the Commonwealth failed to prove the witness-killing aggravator **but also** that the remaining aggravators did not outweigh Johnson's mitigating circumstances.

The witness-killing aggravator played a vital role in the Commonwealth's theory of prosecution. The lead prosecutor consistently stressed that Lewis' jailhouse informant testimony was "very important" and "critical to the case." Majority Opinion at 10 n.17 (citation omitted). It was the "linchpin" of the case.[8] *Id.* (citation omitted). In fact, in his closing argument during the penalty phase, the lead prosecutor explicitly told the jurors that the witness-killing aggravator was "probably one of the heaviest" they had to consider. N.T., 6/8/2015, at 124. The prosecutor argued Johnson "chose to murder [R.R.], too, because in the words of George Lewis — and that is direct evidence . . . not circumstantial evidence . . . the baby was smart, the baby knew me, and could identify me. That's what makes this an aggravating circumstance." *Id.* at 125–126. Thus, it is impossible to ignore that Lewis' testimony was critical to the jury's assessment of Johnson's moral culpability; it fundamentally "alter[ed] the entire evidentiary picture." *Strickland*, 466 U.S. at 695–696.

Upon reading the cold trial transcript, I cannot shake the gut-wrenching moral reaction to Lewis' testimony that Johnson stabbed and killed a four-year-old girl to prevent her from identifying him as the culprit. That he killed R.R. is an aggravating circumstance due to her age, but evidence that he killed her to prevent her from identifying him invokes such a powerful moral and emotional response that I cannot fathom what went through the jurors' minds (or what chills went down their spines) as they heard Lewis' testimony. But, had at least one juror deemed Lewis uncredible based on a competent counsel's effective use of the impeachment evidence, that testimony would not have been

---

[8] The Commonwealth maintains that same position on appeal. *See* Commonwealth Brief at 70 (acknowledging that the prosecutors "hitch[ed] their wagon to Lewis' confession").

weighable in aggravation.[9]  The Majority seems to overlook this nuance.[10]  I take the Commonwealth's stated position on the importance of Lewis' chilling testimony at face value.

For the foregoing reasons, I conclude that, upon a meaningful reweighing of the multiple-murders and child-killing aggravators and the three mitigators found by the jury, there is a reasonable probability that at least one juror would have concluded that the aggravators did not outweigh the mitigating circumstances.

To be clear, I agree with the Majority that "the jury is a black box" and that "we can only (but must) speculate as to its contents."  Majority Opinion at 78 n.200.  However, the Majority's claim that my opinion "writes the multiple-murder aggravator out of the verdict" is spurious.  *Id.*  To repeat what I just wrote above: "[U]pon a meaningful reweighing of

---

[9] Since Lewis' testimony was not probative of the remaining aggravators for committing multiple murders and killing a child, the jury could not have given aggravating weight to that evidence unless it found the witness-killing aggravator beyond a reasonable doubt. *See infra* note 10.  Crucially, had at least one juror found the evidence insufficient to prove the witness-killing aggravator beyond a reasonable doubt, the entire jury would have been precluded from weighing Lewis' testimony in aggravation.  That is because his testimony would not have been admissible through one of the two remaining aggravators.  *See* 42 Pa.C.S. § 9711(d); *Hughes*, 865 A.2d at 799 n.44; *cf. Sanders*, 546 U.S. at 220–221.

[10] The Majority says it "reviewed the evidence in aggravation and mitigation, taking careful account of what we can glean from the jury's consideration of that evidence, as reflected in the aggravators and mitigators the jury properly found and in its verdict."  Majority Opinion at 78 n.200.  But, due to the Majority's clandestine reweighing, it is unclear if that "evidence" includes Lewis' testimony on the aggravation side of the scale.  Although Lewis' testimony would have been admissible in the Commonwealth's presentation of the aggravating circumstances for purposes of determining Johnson's death-eligibility, our Court must assume that, had one or more jurors found insufficient proof of the witness-killing aggravator, the jurors would have followed the court's instructions and omitted that evidence from the selection process. *See Commonwealth v. Reid*, 99 A.3d 470, 514 (Pa. 2014) ("[A] jury is presumed to follow a trial court's instructions.") (citation omitted).  So, even if eleven of twelve jurors heard Lewis' testimony and found the witness-killing aggravator beyond a reasonable doubt, none of them would have been permitted to weigh that testimony in aggravation during the selection process. *See supra* note 9.  Thus, insofar as the Majority incorporated Lewis' testimony into the prejudice analysis, the Majority's reliance thereon is misplaced.

the **multiple-murders** and child-killing aggravators and the three mitigators found by the jury, there is a reasonable probability that at least one juror would have concluded that the aggravators did not outweigh the mitigating circumstances." *See supra* p. 13 (emphasis added).

The Majority and I disagree on whether that reweighing must be done by a jury. I conclude it must, because (1) there is a reasonable possibility that, but for counsel's deficient performance, at least one juror would have found Lewis's testimony not credible, and thus that the Commonwealth failed to prove the witness-killing aggravator beyond a reasonable doubt; (2) that aggravator played a vital role in the Commonwealth's case; (3) the jury did not find the multiple-murders aggravator alone was sufficient to justify the death penalty; (4) the jury found three mitigators; (5) no jury ever weighed those three mitigators, the multiple-murders aggravator, and the child-killing aggravator without the witness-killing aggravator in the moral equation; and (6) there is a reasonable probability that, without the witness-killing aggravator, one or more jurors would have voted not to impose the death penalty. *Cf. Commonwealth v. Brown*, 648 A.2d 1177, 1186 (Pa. 1994) ("The jury's weighing of aggravating and mitigating circumstances is a **subjective** process.") (emphasis added); *Commonwealth v. Fahy*, 516 A.2d 689, 698 (Pa. 1986) ("[I]t is exclusively a jury question whether any mitigating factor is to be given determinative weight when balanced with other mitigating and aggravating circumstances in the case.").

Although the jury could have imposed the death penalty based on the child-killing aggravator and multiple-murders aggravator, the test for prejudice is not whether the jury could "still have decided on the death penalty." *Rompilla*, 545 U.S. at 393. Nor is it whether the jury "more likely than not" would still have imposed death. *Porter*, 558 U.S. at 44 (*citing Strickland*, 466 U.S. at 693–694). The test is whether "the likelihood of a

different result … is 'sufficient to undermine confidence in the outcome' actually reached at sentencing." *Rompilla*, 545 U.S. at 393 (*citing Strickland*, 466 U.S. at 694).

Since "execution is the most irremediable and unfathomable of penalties[,]" remand is the proper course to ensure that Johnson's death sentence is legally **and morally** sound. *Ford v. Wainwright*, 477 U.S. 399, 411 (1986). *See also* Dissent at 11–12 n.8 (criticizing the Majority for "acting as a super jury without engaging in the individualized weighing of the remaining aggravating circumstances and the mitigating circumstances — a weighing process that is constitutionally and statutorily mandated in capital sentencing") (citations omitted); *Daniels*, 104 A.3d at 321 (Saylor, J., concurring and dissenting) (expressing concern about "the speculativeness inherent in no-prejudice determinations" in capital cases, and stating that this Court "should err on the side of providing defendants with one trial at which the defense is guided by a competent, prepared lawyer") (*citing Commonwealth v. Koehler*, 36 A.3d 121, 162 (Pa. 2012) (Saylor, J., concurring)).

In short, because trial counsel's deficient performance undermines my confidence that all twelve jurors would have reached the same moral judgment absent the witness-killing aggravator, I would hold that Johnson suffered prejudice and would remand for a new penalty phase.